STATE OF NORTH CAROLINA v. LEBURN HOYT LANG

No. 69

(Filed 2 December 1980)

**Criminal Law § 101.4— jury's request for evidence — denial because of assumed lack of authority — prejudicial error**

> The trial judge's refusal of the jury's request to have the transcript of the testimony of one of defendant's witnesses read to it on the grounds that the judge did not have the authority to grant the jury's request in his discretion was prejudicial error entitling defendant to a new trial.

> Justice BROCK did not participate in the consideration or decision of this case.

ON defendant's petition for discretionary review from a decision of the Court of Appeals, 46 N.C. App. 138, 264 S.E. 2d 821 (1980) (opinion by Morris, C.J., with Martin (Harry C.), J. and Hill, J. concurring), affirming the judgments of *Grist, J.*, entered 11 January 1979 in Superior Court, BUNCOMBE County.

Defendant was charged in indictments, proper in form, with assault with the intent to commit rape and kidnapping with the intent to commit rape. He was convicted by a jury on both counts and sentenced to fifteen years imprisonment for the assault and twenty-five years imprisonment for the kidnapping. The trial court suspended the twenty-five year sentence and placed the defendant on probation for a five year period, to commence at the expiration of the fifteen year term.

The State's evidence tended to show that at approximately 9:20 to 9:30 p.m. on 4 October 1978 a man ordered prosecutrix Teresa Fender, at gunpoint, to get into his automobile in the parking lot of the Asheville Mall on Tunnel Road in Asheville, North Carolina. After forcing Ms. Fender to put her head down, he drove for about thirty minutes before parking the car. He then instructed her to face the right front door of the automobile and remove her clothing. At that point a bicyclist passed by the car and the man ordered Ms. Fender to put her head down again, whereupon he drove for another fifteen minutes and again stopped the car. He ordered Ms. Fender to face the car door again and remove all her clothing, and she complied. He then fondled her breasts and vagina.

Ms. Fender explained that a scar on her breast was from the open heart surgery she had undergone several years before. The man told her to put her clothing back on, except for her shirt. He drove for a short while, fondling Ms. Fender's breasts as he drove, then stopped, allowed Ms. Fender to put on her shirt, and let her out at a bowling alley on Tunnel Road in Asheville, near the place where he had picked her up. Ms. Fender ran into the bowling alley and law enforcement officers were summoned. Ms. Fender testified that the man had a gun in his possession during the entire incident and that she could see the weapon when she looked in his direction. Although she kept her head lowered during most of the time she was in the car, as the man had ordered, she stated that she managed to glance at him several times. During an interview with police officers at the bowling alley, Ms. Fender described her abductor's car as a gray, four-door Ford Granada, with a Citizens Band radio antenna mounted on the back and a red velvet interior, containing a box filled with papers in the back seat, a tray with several items in it on the front floorboard, a Citizens Band radio hung low under the dashboard, and several papers strewn about the floor of the car. She described her abductor as a white male with grayish hair, approximately fifty to fifty-five years old, and from 5 feet 8 inches to 5 feet 9 inches tall. Later that evening police officers located a gray Chevrolet Impala, which matched the prosecutrix' description in all respects except for the make and style of the vehicle. Ms. Fender identified the car as the one in which she had been abducted. Police officers then arrested defendant, the registered owner of the vehicle, and Ms. Fender identified him in a three-person line-up as the man who had kidnapped her.

Defendant presented evidence tending to show that from 9:00 to 10:00 p.m. on 4 October 1978 he was at a restaurant and therefore could not have committed the offenses for which he was charged. Ms. Rena James, a waitress at the restaurant, testified at trial that defendant entered the restaurant just before the closing time of 9:00 p.m., and that he was the last customer to leave at approximately 10:00 p.m.

We allowed defendant's petition for discretionary review pursuant to G.S. 7A-31 on 15 July 1980.

*Joseph Beeler; Tharrington, Smith & Hargrove by Roger W. Smith; and Elmore & Powell, P.A., by Bruce Elmore, Sr. for defendant.*

*Attorney General Rufus L. Edmisten by Special Deputy Attorney General T. Buie Costen and Assistant Attorney General Nonnie F. Midgette for the State.*

COPELAND, Justice.

By his nineteenth assignment of error, defendant contends that the trial court erred in refusing the jury's request, after beginning its deliberations, to have the transcript of the testimony of defendant's witness Ms. Rena James read to it. We hold that the trial judge's refusal on the grounds that he did not have the authority, in his discretion, to grant the jury's request was prejudicial error entitling defendant to a new trial.

It is well settled in this jurisdiction that the decision whether to grant or refuse a request by the jury, after beginning its deliberations, for a restatement of the evidence lies within the discretion of the trial court. *State v. Hough,* 299 N.C. 245, 262 S.E. 2d 268 (1980); *State v. Ford,* 297 N.C. 28, 252 S.E. 2d 717 (1979); *State v. Fulcher,* 294 N.C. 503, 243 S.E. 2d 338 (1978). When a motion addressed to the discretion of the court is denied upon the ground that the court has no power to grant the motion in its discretion, the ruling is reviewable. *Calloway v. Ford Motor Co.,* 281 N.C. 496, 189 S.E. 2d 484 (1972). In addition, there is error when the trial court refuses to exercise its discretion in the erroneous belief that it has no discretion as to the question presented. Where the error is prejudicial, the defendant is entitled to have his motion reconsidered and passed upon as a discretionary matter. *State v. Ford, supra; Calloway v. Ford Motor Co., supra; Tickle v. Hobgood,* 212 N.C. 762, 194 S.E. 461 (1938). *See also People v. Autman,* 58 Ill. 2d 171, 317 N.E. 2d 570 (1974); *People v. Queen,* 56 Ill. 2d 560, 310 N.E. 2d 166 (1974).

We find that the trial court's response to the jury's request in this case must be interpreted as a statement that the court believed it did not have discretion to consider the request. In answer to the jury's question whether the transcript of Ms. Rena James was available to be read to them, the trial judge replied:

"No sir, the transcript is not available to the jury. The lady who takes it down, of course, is just another individual like you 12 people. And what she hears may or may not be what you hear, and 12 of you people are expected, through your ability to hear and understand and to recall

evidence, to establish what the testimony was. No, I hope you understand. She takes it down and the record, after she submits it to the various individuals, if it needs to be submitted is gone over and then they themselves can object to what she had in the record as not being what the witness says, and so on and so forth. For that reason I do not allow records to even be read back to the jury, because she may not have heard it exactly as the witness said it, and you people might have heard it differently; so for that reason you are required to recall the witness' testimony as you've heard it."

We hold that Judge Grist's comment to the jury that the transcript was *not available* to them was an indication that he did not exercise his discretion to decide whether the transcript should have been available under the facts of this case. The denial of the jury's request as a matter of law was error.

We further find the trial court's error prejudicial to defendant in this action. In a case involving an identical assignment of error, *State v. Ford, supra,* we held that the trial judge's failure to exercise his discretion was not prejudicial where the evidence requested by the jury concerned the exact date and time that each perpetrator of the crime involved was arrested. The Court reasoned that the requested evidence was conflicting, inconclusive, or not in the record, and that any attempt to review it would likely have raised more questions than it would have answered. In the present case, however, the requested evidence was testimony which, if believed, would have established an alibi for defendant. Ms. James' statements were in direct conflict with the evidence presented by the State. Thus, whether the jury fully understood the alibi witness' testimony was material to the determination of defendant's guilt or innocence. Defendant was at least entitled to have the jury's request resolved as a discretionary matter, and it was prejudicial error for the trial judge to refuse to do so.

Since we have held that the trial court committed prejudicial error entitling defendant to a new trial, we deem it unnecessary to discuss defendant's remaining assignments of error, as they are unlikely to recur. However, defendant's assignment involving the failure of the trial court to allow defendant's motion to reopen the case in order to introduce into evidence Ms. Rena James' time card from the restaurant at which she worked gives us particular con-

cern, since the time card corroborated Ms. James' crucial testimony as defendant's alibi witness. Because defendant can subpoena the time card and present this evidence at retrial, we do not consider this assignment at this time.

For the reason that the trial court erred in failing to exercise its discretion in determining whether to grant the jury's request for a restatement of Ms. James' testimony, defendant is given a

New trial.

Justice BROCK did not participate in the consideration or decision of this case.