STATE OF NORTH CAROLINA v. JOSEPH EARLE LEWIS, JR.

No. 571A86

(Filed 5 November 1987)

1. **Constitutional Law § 48— misstatement in opening statement—no denial of effective assistance of counsel**

    Defendant was not denied his constitutional right to the effective assistance of counsel in a prosecution for first degree murder, armed robbery, felonious breaking and entering, and felonious larceny because defense counsel, during his opening statement to the jury, placed before the jury evidence of other pending charges against defendant when he incorrectly stated that defendant had no other pending charges against him for breaking and entering and was contradicted by the prosecutor. Nor was there error in the trial court's instructions to the effect that the jurors should not consider the opening statements of counsel as evidence in deliberating on their verdict.

2. **Homicide § 25.2— first degree murder—conviction on premeditation and deliberation theory—failure to instruct on felony murder**

    A defendant who was convicted and sentenced for first degree murder on the theory of premeditation and deliberation and who received a consecutive

sentence for armed robbery was not prejudiced by the trial court's failure to submit first degree murder on the theory of felony murder with robbery as the underlying felony since no merger would have occurred if defendant had been convicted under both theories, and the trial court would still have been free to impose a separate and consecutive sentence for armed robbery.

**3. Criminal Law § 101.4— denial of jury request to review evidence—exercise of discretion**

The trial judge properly exercised his discretion in compliance with N.C. G.S. § 15A-1233(a) when he denied a jury request to review a transcript of the testimony where the judge allowed the jury's request to examine photographs and then told the jurors that he would not have the court reporter read back to them from her notes because "I just don't think that's the way to do things."

APPEAL by defendant from sentences imposed by *Brannon, J.*, at the 12 September 1983 Criminal Session of Superior Court, ONSLOW County. Heard in the Supreme Court 8 September 1987.

*Lacy H. Thornburg, Attorney General, by David Roy Blackwell, Assistant Attorney General, for the State.*

*Robin E. Hudson, for defendant-appellant.*

FRYE, Justice.

Defendant contends on this appeal that he was denied his constitutional right to effective assistance of counsel because of his own lawyer's misstatements during opening statements to the jury. Defendant contends also that the trial judge committed reversible error when he instructed the jury regarding defense counsel's misstatements, for his failure to instruct the jury on felony murder, and for his alleged failure to exercise any discretion when denying the jury access to the trial transcripts during jury deliberations. We find no prejudicial error and hold that defendant received a fair trial.

Defendant was indicted on 26 July 1983 for felonious breaking and entering of the Farmers' Cooperative Exchange (FCX) in Jacksonville, North Carolina, felonious larceny, robbery with a dangerous weapon and first degree murder of Harry Fountain, the owner of Harry's Wheel Alignment, located also in Jacksonville, North Carolina. These offenses were consolidated for trial. Defendant was tried at the 12 September 1983 Criminal Session of Superior Court, Onslow County, before Brannon, J.

The State's evidence against defendant included testimony from several members of the victim's family, law enforcement officers, Timothy Fisher who allegedly aided and abetted in the crimes charged, and others.

Joseph Pelletier, the manager of the FCX store, testified that when he went to his store on 27 January 1983 he discovered that somebody had forcefully entered his store during the night, had moved a 500 pound safe, had left behind an acetylene torch and a splitting maul, and had taken a pair of gloves, a flashlight and some batteries. The FCX store is located next to Harry's Wheel Alignment.

Timothy Fisher, who was fifteen years old at the time of the alleged offenses, testified that he had known defendant for about two years and that they had "hung around" together. He testified that on the night of 26 January 1983 he and defendant were at Jerry's Disco in Jacksonville, North Carolina, and that defendant suggested that they "hit" some places. According to Fisher he and defendant then walked to a store across from the FCX whereupon defendant stole some cigarettes and said that they would "hit" the FCX and Harry's Wheel Alignment. Fisher further testified that he and defendant went first to the FCX around 8 p.m. Defendant told Fisher to be the "lookout," whereupon defendant broke into the FCX with a small crowbar he had in his jacket. Fisher testified that defendant stayed inside the FCX for about an hour and a half and came out with some gloves, a flashlight and a crowbar.

According to Fisher, he and defendant then went to Harry's Wheel Alignment where Fisher again served as the "lookout" while defendant went in. In a few minutes someone drove up and went into the garage, whereupon Fisher banged on the wall to let defendant know that someone was coming. Fisher testified that within fifteen minutes defendant came running out of the store. Defendant told Fisher that he had hid in the bathroom but a guy came in to wash his hands, saw defendant in the mirror, whereupon defendant hit him from behind, took his wallet and ran. Fisher further testified that as he and defendant were running towards the bus station defendant threw a crowbar into the woods behind the store and threw a wallet into an area beside a trailer park. Defendant kept all the money. After arriving at the

bus station, according to Fisher, he and defendant took a taxi to Court Street and later went separate ways. On cross-examination Fisher admitted that he had been previously charged in forty-one break-ins.

Defendant did not testify but he did present alibi evidence. Jerry Pickett, the owner of Jerry's Disco in Jacksonville, North Carolina, testified that during the evening of the alleged offenses defendant was at the disco until approximately 10 p.m. at which time he left and returned at 11:30 p.m. On rebuttal, Earl Manning, the district attorney's investigator, testified that when he initially conducted the investigation Jerry Pickett had told him that defendant came in around 6 p.m. on the day of the alleged offenses and left shortly after the disco opened and that Jerry Pickett stated he did not see defendant again until approximately 11 p.m. when defendant arrived in a cab with Timothy Fisher.

The jury returned verdicts of guilty of all submitted charges. At the sentencing hearing on the first degree murder charge the jury found one aggravating circumstance, that defendant committed the murder while he was engaged in the commission of robbery with a dangerous weapon. The jury specifically found that the offense was not especially heinous, atrocious or cruel. In determining whether there were any mitigating circumstances, the jury found that defendant had no significant history of prior criminal activity and also found other mitigating circumstances arising from the evidence. In response to the question of whether the mitigating circumstances found were insufficient to outweigh the aggravating circumstance, the jury answered "no" and accordingly recommended that defendant be sentenced to life imprisonment. The trial judge thereafter conducted a sentencing hearing with reference to the felony convictions, made appropriate findings, and sentenced defendant accordingly.

The following judgments were entered against defendant: life imprisonment for first degree murder, forty years for robbery with a dangerous weapon, ten years for felonious breaking and entering, ten years for felonious larceny, all sentences to be served consecutively. Because the time within which to perfect defendant's appeal as of right for the life imprisonment sentence had expired, defendant filed a *pro se* petition for writ of certiorari which was allowed by this Court on 18 September 1986. Defend-

ant's motion to bypass the Court of Appeals on the lesser offenses was allowed by this Court on 24 February 1987.

[1] In his first assignment of error defendant contends he was denied his constitutional right to effective assistance of counsel when his own attorney, through his misstatements, permitted the prosecutor to disclose to the jury that defendant had been previously arrested for other breaking and entering offenses, a fact defendant contends the jury would not have otherwise known. Defendant contends that this disclosure of other alleged crimes was highly prejudicial and demonstrates *per se* ineffective assistance of counsel entitling defendant to a new trial. Defendant's second assignment of error is a continuation of his first assignment of error in that defendant argues that the trial court's instructions to the jury regarding counsels' comments were inadequate to erase the purported prejudice. We consider the first and second assignments of error together.

The district attorney's opening statement briefly summarized the evidence the State intended to present. The statement referred to Timothy Fisher as "a young 15 year old boy was 15 at the time; he is now 16, and the defendant, who I think is about 26 or 27 years old." The district attorney's opening statement otherwise forecasted the State's evidence without comment upon or description of either the defendant or Timothy Fisher, the defendant's alleged accomplice. Defense counsel then began his opening statement. During this opening statement, counsel requested the jurors to carefully scrutinize Timothy Fisher's testimony:

> The District Attorney, Mr. Andrews, has made much of the fact that Timothy Fisher 15, now 16 years of age, and Joe Earle Lewis, 26 years of age, apparently were together with respect to this, thereby, of course, at least initially indicating to you that we have a very young boy and we have a mature individual. The 15, now 16 year old boy, however, I think the evidence will indicate has been arrested and charged with forty-one separate breakings and enterings and larcenies occurring here in Onslow County all on his own. The defendant in this case, Joseph Earle Lewis, has not been charged, except in this case with any breakings and enterings and larcenies occurring here in Onslow County.

> MR. ANDREWS: Your Honor, I object to that. Mr. Miner knows that that is not so.

MR. MINER: Excuse me, Your Honor. I believe that there is not record other than the offenses which were brought to trial or aligned with these cases.

MR. ANDREWS: I believe if he'll look at the calendar, we had a hearing on motions last week, which joined this break-in and the murder. There were other break-ins which he was charged with that were not joined with this case.

THE COURT: Ladies and Gentlemen, as I told you yesterday and I repeat again today, it will be your duty in this case as jurors have a duty in every case to decide these cases now on trial from the evidence which will come from the stand in this trial in the light of the applicable law of North Carolina that I'll instruct you on at the conclusion of the trial. You will not base your verdict on anything else.

Now, each of these esteemed lawyers by Statute is allowed to make what's known as an opening statement; that is, in fact, what they are doing. As you have been told and I repeat to you now, an opening statement is not evidence. After all, the lawyers are not sworn; they are not subject to cross-examination; they are advocates. What they are attempting to do by an opening statement is simply to give you kind of a verbal road map of what they contend the issues in the case are and what they further contend is the admissible evidence which will come out in the trial dealing with those issues. So, to the extent that an opening statement may be beyond that or appear to vary from that, so it's no longer a verbal roadmap of what's to be done at trial when [sic] you are, of course to disregard it. I assure you that both of these lawyers are very capable and none of them would attempt to do anything outside of the rules of procedure or anything in any kind of effort to mislead you. They are advocates and as advocates they are not to take anything from that. You are to decide this case from the evidence and the law. All right. Obviously what they say here is simply not evidence. It's not argument, either. It is an opening statement. You may proceed.

MR. MINER: I stand here as a very embarassed counsellor. I misspoke in the case. The point that I was intending to make — thank you, Mr. Andrews. The point I was trying to make in

the case, this so-called young boy has 41 arrests for breaking and entering and larceny here in Onslow County. There's a plea bargain in return for his testimony in this case by which he is allowed to plead to 25 of those 41. He has not yet been sentenced for those 25 breaking, entering and larcenies to which he has pled guilty, and he will not be sentenced until after the conclusion of this trial with respect to his plea bargain. In other words, he must testify before he will be sentenced in this case, pursuant to the plea in the case.

Defense counsel closed his opening statement by suggesting possible motives for Timothy Fisher's conduct and by urging the jury to carefully evaluate Fisher's testimony:

I'd like for you to listen very closely to the testimony of Timothy Fisher. I apologize for misspeaking to Mr. Andrews, the Court and to yourself in this case, and I hope you won't hold that misspeaking against my client. Thank you very much.

Defendant asserts that this conduct deprived him of constitutionally effective assistance of counsel because counsel's opening statement placed before the jury evidence of the defendant's other pending charges. The trial court's instructions, defendant asserts, did nothing to repair the alleged damage.

A defendant's constitutional right to counsel includes the right to the effective assistance of counsel. *State v. Braswell*, 312 N.C. 553, 324 S.E. 2d 241 (1985). The test for determining whether a defendant in a criminal case has received effective assistance of counsel is that set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed. 2d 674 (1984), and the test is the same under both the federal and state constitutions. *State v. Braswell*, 312 N.C. 553, 324 S.E. 2d 241. To establish that there was ineffective assistance of counsel a defendant must meet the two-prong test of *Strickland*:

First the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that coun-

sel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 80 L.Ed. 2d 674, 693.

In the case *sub judice* defense counsel, during his opening statement to the jury, inadvertently stated that defendant had no other pending charges against him for breaking and entering. Given the context in which the statement was made, we conclude, and so hold, that the error was not so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth amendment. *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed. 2d 674. The statement was made as a part of an obvious attempt by the defense attorney to discredit the principal witness against his client—a witness who was an experienced criminal notwithstanding his tender age. While defense counsel's overzealousness backfired when the prosecutor contradicted him in the presence of the jury, we do not consider counsel's actions in context as being constitutionally deficient. *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed. 2d 674; *State v. Braswell*, 312 N.C. 553, 324 S.E. 2d 241. Furthermore, defendant has failed to show that his "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687, 80 L.Ed. 2d 674, 693.

In reviewing the trial court's instructions to the jury, we find that the trial court correctly instructed the jury that they were not to consider the opening statements of counsel as evidence in deliberating on their verdict. The court explicitly told the jury that opening statements are not part of the evidence, that the lawyers are not sworn witnesses, nor are they subject to cross-examination. At the conclusion of its instructions the court reiterated that the jury was to decide the case from the evidence and that neither counsel's comments were part of the evidence.

Thus, we find no error in the trial court's instructions regarding counsels' comments during opening statements. Also, defendant has failed to show that the jurors' knowledge of the pending charges compromised "their ability to listen anew to and fairly judge the evidence in defendant's case." *State v. Ysaguire*, 309 N.C. 780, 784, 309 S.E. 2d 436, 439 (1985). Defendant's first and second assignments of error are rejected.

[2] Defendant next argues that the trial court's failure to submit felony murder as an underlying theory for the first degree murder constitutes plain error. In support of this proposition defendant asserts that although felony murder is not a lesser included offense of first degree murder by means of premeditation and deliberation, it is a "lower grade" offense. Therefore, argues defendant, the trial court should have submitted first degree murder based on premeditation and deliberation and on the felony murder theory with the armed robbery charge as the underlying felony. Had the jury convicted him under the felony murder theory, contends defendant, the armed robbery felony would have merged and he would not have been sentenced to an extended prison term based on the armed robbery charge.

When the evidence so warrants, a trial judge may submit a special verdict form to the jury that allows the jurors to indicate whether they find the defendant guilty of first degree murder based upon premeditation and deliberation or first degree murder based on a felony murder theory. *State v. Silhan,* 302 N.C. 223, 275 S.E. 2d 450 (1981). However, if both theories are submitted to the jury and the jury finds the defendant guilty under both theories the underlying felony need not merge with the murder. *State v. Rook,* 304 N.C. 201, 283 S.E. 2d 732 (1981).

Defendant argues that he faces an extended prison sentence due to the trial court's failure to submit also the felony murder theory to the jury. The jury convicted defendant of first degree murder upon a theory of premeditation and deliberation. Had the trial court submitted both the premeditation and deliberation and the felony murder theory to the jury, defendant could have been convicted under both theories with the armed robbery as the predicate felony. However, the trial court would still have been free to impose a separate and consecutive sentence for the armed robbery offense since no merger occurs. *State v. Rook,* 304 N.C. 201, 283 S.E. 2d 732. Because defendant could have received the same sentence regardless of whether the felony murder theory was submitted to the jury, we find that defendant suffered no prejudice.

[3] In his final assignment of error, defendant argues that the trial judge failed to exercise any discretion when he denied a jury request to review a transcript of the testimony. Defendant con-

tends that the Court's decision in *State v. Lang*, 301 N.C. 508, 272 S.E. 2d 123 (1980), entitles him to a new trial.

During deliberations a jury may request a review of certain testimony and other evidence after it has retired to deliberate. N.C.G.S. § 15A-1233(a) (1983). The court may, in its discretion, have the requested testimony read to the jury. *Id.* In *Lang*, defendant was granted a new trial when it was determined that the trial court had mistakenly denied, as a matter of law, a jury request to review specific portions of the transcript. *Lang*, 301 N.C. 508, 272 S.E. 2d 123. The Court held that the trial judge's comment to the jury that the transcript was not available to them was an indication that he did not exercise his discretion to decide whether the transcript should have been available under the facts of that case. Likewise, in *State v. Ashe*, 314 N.C. 28, 331 S.E. 2d 652 (1985), the jury foreman requested a review of the trial transcript and the trial court, in denying the foreman's request, stated that "[t]here is no transcript at this point." This Court held that the defendant was entitled to a new trial because (1) it was obvious that the trial court felt it had no authority to grant the foreman's request, thus no discretion was exercised; and (2) the trial court erred in failing to summon all the "jurors into the courtroom to hear both the request and his response to it." *Id.* at 35, 331 S.E. 2d at 656-57.

In the instant case, the foreman, with the other jurors present, made a general inquiry of the court as follows:

FOREMAN: Yes, sir. Second question I have is are we allowed to review any evidence that's been presented in the case, either by transcript or by pictures?

Judge Brannon first conferred with trial counsel and then told the jurors that they could examine the photographs or other exhibits in the jury box but could not take them into the jury room. He then gave a negative answer to a review of the transcript, telling the jurors that he would not have the court reporter read back to them from her notes, adding, "I just don't think that's the way to do things." It thus appears that the trial judge did exercise discretion. He considered both requests and, in effect, allowed one and denied the other. N.C.G.S. § 15A-1233(a) provides as follows:

If the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be con-

ducted to the courtroom. The judge in his discretion, after notice to the prosecutor and defendant, may direct that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open court the requested materials admitted into evidence. In his discretion the judge may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

Under this statute the trial judge, in his discretion, may, after notice to the prosecutor and defendant, direct that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open court the requested materials admitted into evidence. Here, the jury inquired about reviewing both prior testimony and exhibits. The trial judge, after conferring with the prosecutor and defense attorney, exercised discretion when he denied the former and allowed the latter. Judge Brannon further reminded the jurors of his earlier charge to them to depend upon their individual and collective recollection of the evidence rather than any recapitulation of the evidence by the judge or the attorneys. We hold that the trial court properly exercised its discretion in accordance with the statute.

Defendant received a fair trial free of prejudicial error.

No error.