STATE OF NORTH CAROLINA v. EMMETT DANIEL HELMS

No. 8829SC789

(Filed 18 April 1989)

**1. Criminal Law § 101.4— jury—request to hear evidence again—refusal of judge to exercise discretion**

The trial court erred in a prosecution for first degree sexual offense when the jury sent a note to the judge during deliberations asking to hear the victim's testimony again and the judge replied in writing "No. That is not possible." The judge's words must be interpreted as a statement that he believed he did not have discretion to consider the request, and the judge thus erred by failing to exercise his discretion. There was prejudice in that the most important witness to testify at defendant's trial was the victim and whether the jury fully understood the victim's testimony was material and critical to their determination of defendant's guilt or innocence. N.C.G.S. § 15A-1233(a) (1988).

**2. Criminal Law § 101.4— jury—request to review evidence—denied by note to jury room—no prejudicial error**

There was no prejudicial error in a prosecution for first degree sexual offense when the judge received a note from the jury asking to review evidence and replied in writing that that was not possible, even though N.C.G.S. § 15A-1233(a) requires that the jury be present in the courtroom when the judge receives its request and when the judge responds to it, because the judge specifically asked defendant's lawyer if the latter required the jury to be returned to the courtroom, and the lawyer consented to the communication procedure.

**3. Criminal Law § 50.1— first degree sexual offense—result of psychological testing—opinion that defendant's responses accurate**

The trial court erred in a prosecution for first degree sexual offense by sustaining the State's objection to defendant's asking a witness whether tests given to defendant to detect pedophilic traits "were done in such a way as to determine the accuracy of the responses that were given?" The judge's ruling undermined the scientific basis of the doctor's testimony by advancing the impression put forth by the State

that the doctor founded his conclusions about defendant on insufficient or unsound data.

**4. Criminal Law § 50.1 — first degree sexual offense — psychological testing — State's objection sustained**

There was no prejudicial error in a prosecution for first degree sexual offense from not allowing testimony about a study which allegedly supported a theory that pedophiles fear women where defendant failed to make a proffer of testimony after the judge sustained the State's objection; from the failure to allow the doctor to testify that none of the testimony offered by the State's witnesses indicated defendant had any of the traits associated with pedophilia where defendant failed to lay the necessary foundation for the admission of this testimony; and testimony by one doctor that another had told him that the victim had built with building blocks a snake with several penises during the child's visit with the doctor was properly admitted under N.C.G.S. § 8C-1, Rule 703.

APPEAL by defendant from *Chase B. Saunders, Judge.* Judgment entered 17 March 1988 in Superior Court, TRANSYLVANIA County. Heard in the Court of Appeals 23 February 1989.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Marilyn R. Mudge, for the State.*

*Glover & Petersen, P.A., by Ann B. Petersen, for defendant-appellant.*

BECTON, Judge.

On 17 March 1988, a jury convicted defendant, Emmett Daniel Helms, of one count of first degree sexual offense (engaging in fellatio with his son). The trial judge sentenced defendant to the statutory term of life imprisonment. Defendant appeals. We reverse the judgment and remand the case for a new trial.

I

Defendant, Emmett Daniel Helms, and Ruth Beddingfield married in August 1982. Their son, whom we shall call "A.H.," was born the following September. In April 1985, defendant and Ruth Helms separated. Ms. Helms took custody of A.H., and the two went to live with Ms. Helms' parents.

Defendant and Ruth Helms agreed that A.H. would not have overnight visits with defendant until the child was three years old. A.H.'s first overnight visit with defendant took place on 3 January 1987. Their second, and last, visit occurred two weeks later.

The State's evidence tended to show that, when A.H. returned from his second visit with defendant, he complained that his penis hurt because defendant had pinched it. The following day, Ruth Helms took A.H. to a pediatrician. The physician did not discover any abnormality. A day later, A.H. told his mother that defendant had given him "green pills." Ruth Helms then scheduled a 30 January appointment for A.H. to see Dr. Terrence Clark, a psychiatrist. She also arranged for A.H. to meet with Dr. Gregg Simms, Dr. Clark's associate, on 27 January. Dr. Simms did not diagnose the child as having been abused.

Prior to defendant's trial, A.H. saw Dr. Clark approximately 24 times. During one of the visits, Ruth Helms reported that she had noticed two small scabs on A.H.'s arm and that A.H. told her, "That's where Daddy Dan [A.H.'s name for defendant] gave me the shots." Dr. Clark examined A.H.'s arm and concluded the scabs "could in fact have been consistent with the size of a needle puncture." Dr. Clark informed Ruth Helms that, based on his evaluation of the child, he believed it necessary to report A.H. as a possible victim of sexual abuse to the Department of Social Services (DSS).

Rose Erskine, a DSS social worker, interviewed Ruth Helms and A.H. on 11 and 25 February 1987. Sometime in March, Ruth Helms notified Rose Erskine that A.H. had said defendant "had put his [defendant's] penis in [A.H.'s] mouth and peed old bad-tasting stuff and that it made him sick."

At trial, A.H. claimed that, during the first overnight visit, defendant twice injected "green stuff" into both their arms with a needle A.H. described as being two to three feet long. A.H. testified that defendant said, "Shit, shit, damn" as he injected A.H. and that the injections made him sleepy. He further testified that, after the injections, defendant put his penis into A.H.'s mouth and rectum. He said that the penis tasted like "rotten oranges," that it made him sleepy, that he "fell back two or three times," and that defendant said, "Shit, piss, damn." A.H. testified that defendant showed him a black dildo and said, "Shit, piss, damn" when displaying it. He further alleged that, on the first overnight

visit, defendant locked him out of the apartment for "20 hours," that defendant was nude for "20 hours," and that defendant stole all of A.H.'s toys.

The State introduced statements attributed to A.H. that were contained in letters written by Rose Erskine to the Transylvania County Sheriff's Department. Ms. Erskine wrote that A.H. had said defendant pinched his penis, gave him green pills, and stuck him with a needle when defendant and A.H. stayed at a motel with defendant's fiancee, Anita Whitaker, and her nine-year-old son during A.H.'s second visit with defendant. According to Ms. Erskine, A.H. also alleged that, at the motel, defendant and Anita switched each other with sticks while nude, that A.H. switched Anita, and that Anita's son pinched A.H.'s penis.

Defendant denied having molested his son. Regarding A.H.'s first visit, he testified that he put A.H. to bed about 8:00 p.m. Anita Whitaker and Ron Graves corroborated defendant's testimony.

Defendant testified that, when A.H. made his second overnight visit, defendant, Anita, her son, and A.H. went to Charlotte to visit defendant's parents. During the drive home, defendant, Anita, and her son opted to stop at a motel and finish the trip the next day because the weather was inclement, and because sleet had been forecast for later in the evening. A.H. was, by this time, asleep in the car. He continued to sleep until morning, when he awoke in the motel and thought he was at the beach. Anita Whitaker and her son corroborated this testimony.

Dr. Darwin Dorr, a psychologist, testified that defendant hired him to administer psychological tests to determine if defendant possessed any pedophilic characteristics, i.e., those characteristics associated with child abusers. Dr. Dorr testified he found no evidence that defendant had any of the personality traits associated with pedophiles.

We now turn to the issues defendant has raised on appeal.

II

[1] Defendant's first assignment of error arises from a note the jury sent to the trial judge during deliberations. The note asks, "May the jurors please be permitted to hear [A.H.'s] testimony again?" Underneath this question are the words, "No. That is not possible. Judge Saunders." The transcript reflects that the judge,

after receiving the note, held a conference with defendant and the State outside the presence of the court reporter. Following the conference, the judge put the following into the transcript:

> The Court: The jury sent a written note to the Judge and the writing was "Can we hear from [A.H.], the minor victim?" Answer from the Judge, in writing, the answer being written in the presence of Counsel for the defendant and the State was "No" and signed by the Judge and conveyed by the Sheriff back to the Jury Room. Counsel did not object to the procedure and did not request, when specifically inquired of, did not require the Judge to return the Jury to the Courtroom. Counsel for the defense was willing to handle it this way.

Defendant contends that the judge committed reversible error by failing to exercise discretion when he denied the jury's request and by failing to return the jury to the courtroom to receive and respond to their inquiry. We agree.

When a jury requests to review testimony, N.C. Gen. Stat. Sec. 15A-1233(a) (1988) specifies the procedure the trial judge is to follow. The statute provides that

> [i]f the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom. The judge in his discretion, after notice to the prosecutor and defendant, may direct that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open court the requested materials admitted into evidence. In his discretion the judge may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

The statute mandates that the judge fulfill two duties: first, that all the jurors be returned to the courtroom and, second, that the judge exercise discretion in ruling upon the request. *See State v. Ashe*, 314 N.C. 28, 34, 331 S.E. 2d 652, 656 (1985).

The State argues that the jury's request in this case was to hear additional testimony from A. H. himself, thus making Section 15A-1233(a) inapplicable. The State contends our focus should be upon the judge's summary of the jury's request that appears in

the transcript, arguing that "the conflict between the note relied upon by defendant and the quotation from the bench in the transcript should be resolved in favor of the transcript because it alone is a verbatim account of the proceedings as they occurred." Defendant responds that the note itself, contained in the record on appeal, is binding upon our inquiry.

The transcript does not contain a "verbatim account of the proceedings as they occurred." Judge Saunders merely recounted to the court reporter the events that transpired following the jury's request. The note he characterized had already been returned to the jury room. The note itself appears as a part of the certified record, and we agree with defendant that the State may not challenge the note's authenticity on appeal. *See State v. Hedrick*, 289 N.C. 232, 234-35, 221 S.E. 2d 350, 352 (1976) (certified record imports verity and binds appellate court). We decide this issue by looking to Section 15A-1233(a), and we conclude that the judge did not fulfill its two requirements.

A. *Discretion*

The State argues that the brevity of Judge Saunders' reply — "NO. That is not possible" — does not demonstrate that the judge failed to employ his discretion in denying the jury's request. We find this argument untenable. In *State v. Lang*, our Supreme Court found the trial judge's refusal to allow the jury to review testimony because the trial transcript was not available to be "an *indication*" that the judge did not exercise discretion. 301 N.C. 508, 511, 272 S.E. 2d 123, 125 (1980) (emphasis added). At the very least, Judge Saunders' declaration that it was "not possible" for the jury to reexamine A.H.'s testimony likewise "indicated" that he did not use discretion. However, our view is that the judge's answer is more than a mere indication of an absence of discretion, and we hold that his words "must be interpreted as a statement that the [judge] believed [he] did not *have* discretion to consider the request." *Id*. at 510, 272 S.E. 2d at 125 (emphasis added). As in *Lang*, the judge in this case denied the jury's request as a matter of law. *See id*. at 511, 272 S.E. 2d at 125. This constituted error.

The State directs us to *State v. Lewis*, 321 N.C. 42, 361 S.E. 2d 728 (1987), in which our Supreme Court found no error in a trial judge's refusal to allow a jury to review a witness' testimony. In *Lewis*, the jury foreperson asked if the jury might be permitted

to reexamine the evidence, " 'either by transcript or by pictures[.]' " *Id.* at 51, 361 S.E. 2d at 734. The judge conferred with trial counsel and then allowed the jurors to look at photographs in the jury box. He denied the jury's request to review the testimony by having the court reporter read from her notes, saying, "I just don't think that's the way to do things." Our Supreme Court held that the judge exercised discretion because he permitted the jury to look at the photographs and did not allow them to rehear portions of the testimony. *Id.* at 52, 361 S.E. 2d at 734.

The State argues that *Lewis* involved two separate decisions, the first concerning the photographs and the second the testimony. The State thus cites *Lewis* for the proposition that when a judge says, "I just don't think that's the way to do things," the judge has exercised discretion concerning a jury's request to review testimony. Contrary to the State, we read the Supreme Court's holding in *Lewis* as resting on the Court's view that the trial judge made a single decision—that he would allow the jury to review evidence—and exercised his discretion concerning the manner in which he would permit them to do so. Even if the State's construction of *Lewis* is correct, the judge's statement in the case before us is more analogous to *Lang*, in which the trial judge, in effect, also told the jurors it was "not possible" for them to review testimony, because no transcript had been prepared. *See also Ashe*, 314 N.C. at 35, 331 S.E. 2d at 656-57; *State v. Thompkins*, 83 N.C. App. 42, 45-46, 348 S.E. 2d 605, 607 (1986).

Having concluded that the judge erred by failing to exercise discretion, we now rule whether the error entitles defendant to a new trial. Defendant's burden is to demonstrate that, had this error not occurred, there is a reasonable possibility that his trial would have had a different outcome. N.C. Gen. Stat. Sec. 15A-1443(a) (1988); *see State v. McLaughlin*, 320 N.C. 564, 570, 359 S.E. 2d 768, 772 (1987). We hold that defendant has carried this burden.

In *Lang*, the jury requested a review of the testimony of defendant's alibi witness. The judge, without using discretion, denied the request. The Supreme Court said that

. . . the requested evidence was testimony which, if believed, would have established an alibi for defendant. . . . Thus, whether the jury fully understood the alibi witness' testimony was material to the determination of defendant's guilt or innocence.

301 N.C. at 511, 272 S.E. 2d at 125; *see also Ashe,* 314 N.C. at 37, 331 S.E. 2d at 658; *Thompkins,* 83 N.C. App. at 46, 348 S.E. 2d at 607.

The most important witness to testify at defendant's trial was A.H. Arguably, portions of his testimony seem fanciful and might reasonably have led the jury to question whether any crime occurred. Additionally, defendant and his witnesses contradicted A.H.'s allegations. We express no opinion as to how the jury members might have assessed A.H.'s testimony had they been permitted to review it. *See Ashe,* 314 N.C. at 38, 331 S.E. 2d at 658. We are convinced, however, that whether the jury fully understood A.H.'s testimony was material—indeed, critical—to their determination of defendant's guilt or innocence. As in *Lang,* defendant "was at least entitled to have the jury's request resolved as a discretionary matter, and it was prejudicial error for the trial judge to refuse to do so." 301 N.C. at 511, 272 S.E. 2d at 125. Defendant is entitled to a new trial.

B. *Returning the Jury to the Courtroom*

[2]   Section 15A-1233(a) requires that the jury be present in the courtroom when the judge receives its request, and when the judge responds to it. *See Ashe,* 314 N.C. at 36, 331 S.E. 2d at 657. Judge Saunders erred, therefore, by failing to comply with this provision of the statute. We hold, however, that defendant may not receive a new trial on the basis of this error.

In the transcript, Judge Saunders notes that he specifically asked defendant's lawyer if the latter required the jury to be returned to the courtroom. The lawyer did not ask that the jury be brought in, and he acceded to the procedure Judge Saunders used. A lack of objection at trial does not bar a defendant's right to assign error to a judge's failure to comply with the mandates of Section 15A-1233(a). *See id.* at 40, 331 S.E. 2d at 659. In this case, however, defendant's lawyer, beyond simply failing to enter an objection, consented to the communication procedure. We hold, therefore, that defendant has waived his right to assert, on appeal, the judge's failure to bring the jury to the courtroom.

In spite of our holding, we observe that this case illustrates one reason it is error for a trial judge to receive and dispose of a jury's request to review evidence without communicating directly with them. The requirement that all jurors be brought to the court-

room helps ensure that the judge understands what the jury has asked. In this case, the discrepancy between the note and the judge's later restatement of its contents arguably suggests that Judge Saunders misinterpreted the jury's request. Had defendant not waived his right to bring forward this issue on appeal, we would award a new trial on the basis of this error.

## III

[3] Defendant assigns error to the trial judge's sustaining the State's objection to a question defendant asked Dr. Dorr on redirect examination. We agree that the judge erred and award a new trial on this ground as well.

After his arrest, defendant employed Dr. Dorr to conduct tests to determine if defendant had any of the characteristics of a pedophile. Dr. Dorr testified that, in his opinion, defendant did not possess pedophilic traits. On cross-examination, the State's line of questioning suggested that Dr. Dorr's opinion was based merely on information given to him by defendant and Anita Whitaker. On redirect, defendant asked Dr. Dorr if he had conducted physiological tests also. When Dr. Dorr answered that he had, defendant asked, "[W]ere [those tests] done in such a way as to determine the accuracy of the responses that were given by Mr. Helms?" The State objected to this question, and the judge sustained the objection.

The judge's ruling ran counter to our Supreme Court's holding in *State v. Kennedy*, 320 N.C. 20, 357 S.E. 2d 359 (1987). In *Kennedy*, a psychologist testified that a rape victim had responded in an "honest fashion" to questions on personality and IQ tests. Defendant argued on appeal that the testimony amounted to the expert's stating an opinion as to the victim's credibility. Our Supreme Court disagreed, saying:

We do not consider the testimony of [the psychologist] that the victim answered the test questions in an "honest fashion" to be an expert opinion as to her character or credibility. It was merely a statement of opinion by a trained professional based upon personal knowledge and professional expertise *that the test results were reliable* because the victim seemed to respond to the questions in an honest fashion. . . . The psychologist's testimony went not to the credibility of the victim but to the reliability of the test itself.

*Id.* at 31, 357 S.E. 2d at 366 (emphasis added) (citations omitted). The question asked of Dr. Dorr addressed the reliability of the test results even more clearly than did the testimony in *Kennedy.* The question was, therefore, a proper one for defendant to have asked. The judge erred by sustaining the State's objection.

Defendant argues that the judge's error deprived him of his right to due process of law and that, under the United States Supreme Court's ruling in *Chapman v. California,* 386 U.S. 18, 17 L.Ed. 2d 705 (1967), the State has the burden to demonstrate beyond a reasonable doubt that the error was harmless. The State contends that defendant must show, pursuant to N.C. Gen. Stat. Sec. 15A-1443(a) that, but for the error, there is a reasonable possibility a different result would have been reached at trial. Even if we employ the standard favorable to the State, we view the error to be sufficiently prejudicial to defendant so as to constitute reversible error.

We agree with defendant that the judge's ruling undermined the scientific basis of Dr. Dorr's testimony by advancing the impression put forth by the State that Dr. Dorr founded his conclusions about defendant on insufficient or unsound data. The impeachment of Dr. Dorr in this way makes it impossible for us to hold that, had the judge not erred, the jury would have returned the same verdict. Defendant is thus entitled to a new trial.

## IV

We shall briefly address defendant's three remaining assignments of error as they are likely to recur at a second trial.

[4] Defendant first contends that the judge erred by not allowing Dr. Dorr to testify about a study, the results of which allegedly support a theory that pedophiles fear women. In our view, this evidence might have been admissible as showing a basis for Dr. Dorr's opinion that defendant did not meet the psychological profile of a pedophile. *See generally* Brandis, 1 *Brandis on North Carolina Evidence,* Sec. 136 (1988). Defendant, however, failed to make a proffer of the testimony after the judge sustained the State's objection. Thus, our ability to review whether the judge in fact erred, and whether that error was prejudicial, is precluded. *See id.* at Sec. 26. We overrule this assignment of error.

Defendant next argues that Dr. Dorr should have been permitted to testify that none of the testimony offered by the State's

witnesses indicated defendant had any of the traits associated with pedophilia. Rule 703 of the Rules of Evidence plainly allows an expert witness to base opinions on facts or data "perceived or made known to him at or before the hearing." N.C. Gen. Stat. Sec. 8C-1, R. Evid. 703 (1988). These facts or data, however, must "be of a type reasonably relied upon by experts in the particular field." *See id.* and comment. Defendant failed to lay the necessary foundation for the admission of this testimony, and the judge properly sustained the State's objection. We overrule this assignment of error.

Defendant's last assignment of error is to the trial judge's allowing Dr. Clark to testify that Dr. Simms had told him A.H. had built, with building blocks, a snake with several penises during the child's visit with Dr. Simms. We hold that the judge properly admitted this testimony under Rule 703 and overrule this assignment of error.

V

For the reasons we have given above, defendant is entitled to a

New trial.

Judges PARKER and ORR concur.