STATE OF NORTH CAROLINA v. MICKEY JOE HAYES

No. COA06-1152

(Filed 5 June 2007)

**1. Evidence— prior crimes or bad acts—admissible on malice for second-degree murder—not prejudicial**

Evidence of a prior episode of drinking and erratic driving was admissible as evidence of malice in the prosecution of defendant for second-degree murder and driving while impaired. The jury was given an instruction limiting the evidence to the purpose of showing a requisite mental state; moreover, any error was not prejudicial because the evidence of this incident itself was more than sufficient for the jury to infer malice.

**2. Criminal Law— availability of court reporter's notes—instruction not given—no plain error**

There was no plain error in a second-degree murder prosecution where the bailiff told the jury before the trial that the court reporter's notes would not be available; the judge included a statement in the preliminary instructions that obtaining a transcript of the trial was a discretionary matter which would be dealt with later; the issue did not arise during the trial; and the court did not give a further instruction.

Appeal by defendant from judgment entered 17 February 2006 by Judge Henry E. Frye, Jr., in Surry County Superior Court. Heard in the Court of Appeals 23 April 2007.

*Attorney General Roy Cooper, by Assistant Attorney General Kathryne E. Hathcock, for the State.*

*Rudolf Widenhouse & Fialko, by M. Gordon Widenhouse, Jr., for defendant-appellant.*

STEELMAN, Judge.

Evidence of defendant's prior conduct was properly admitted by the trial court pursuant to the provisions of N.C. Gen. Stat. § 8C-1, Rule 404(b). The failure of the trial court to give multiple corrective instructions to the jury concerning the availability of a trial transcript did not constitute plain error.

On 6 March 2004, Mickey Joe Hayes ("defendant") went to Josh Hazelwood's ("Hazelwood") apartment in Dobson, Surry County,

North Carolina, and picked up Hazelwood and Ryan Presslar ("Presslar"). Upon entering defendant's car, Presslar and Hazelwood observed a plastic bag containing several bottles of beer. The three men agreed to travel to Inzone, a nightclub in Kernersville, Forsyth County, North Carolina. Defendant was to drive to the nightclub and Presslar would drive back to Surry County. On the way to the nightclub, defendant and Hazelwood each drank about three beers.

The three men arrived at Inzone around 10:00 p.m. Defendant was seen with an alcoholic beverage nearly the entire time that the three men were there. At about 2:15 a.m., the three men met at one of the bars to prepare to leave. Presslar asked defendant for the keys to defendant's car, and defendant refused, stating that he was going to drive. The three men got into defendant's car and defendant proceeded to drive back to Surry County.

Defendant drove from Inzone to University Parkway in Winston-Salem, where he stopped to get a cheeseburger from Cook Out. Defendant dropped the cheeseburger in his lap while attempting to eat it. Presslar and Hazelwood walked across the street from Cook Out to use the restroom at a gas station. Defendant drove to the gas station. Presslar used the restroom first, while Hazelwood waited in defendant's car. Upon leaving, Presslar could not locate defendant, defendant's car, or Hazelwood. Presslar located defendant and Hazelwood in defendant's car behind a building. Presslar proceeded to get into the car and defendant was laughing. Hazelwood then got out of the car to use the restroom and defendant drove behind another building. When Hazelwood could not locate defendant and Presslar after using the restroom, he asked the occupants of a white Rodeo automobile if they had seen defendant and Presslar. They pointed in the direction of the building defendant had driven behind, and defendant then began to drive back to the gas station. As defendant approached Hazelwood, he accelerated the car, and Hazelwood had to jump through Presslar's open window to get into the car.

Hazelwood commented that the occupants of the Rodeo were attractive, and defendant decided to pursue them. In doing so, defendant exceeded the posted speed limit, flashed the lights, honked the horn, and ran at least two red lights. The Rodeo pulled over to allow defendant to pass. However, defendant pulled behind the Rodeo and the Rodeo returned to the roadway. Defendant finally abandoned the pursuit of the Rodeo and proceeded to drive in excess of the posted speed limit, changing lanes frequently. Upon approach-

ing an on-ramp for U.S. Highway 52, defendant reduced the car's speed, honked the horn, and yelled at a parked tractor-trailer. Presslar and Hazelwood asked defendant to stop honking and yelling and to continue to Dobson. Defendant proceeded north on U.S. Highway 52 towards Dobson exceeding the speed limit, swerving toward the guardrail, and causing the car tires to squeal. Presslar and Hazelwood each repeatedly asked defendant to allow Presslar to drive back to Dobson. Defendant replied that no one was going to drive his car but him. Defendant approached a pickup truck with a rebel flag on its rear window on the highway. Defendant pulled beside the truck, yelled "redneck" at the driver, and made an obscene gesture. Presslar and Hazelwood again asked defendant to continue to Dobson. Defendant then approached a tractor hauling two trailers driving in the right-hand lane of U.S. Highway 52. Defendant told Presslar and Hazelwood that he was going to "run into . . . that truck." Defendant further stated that he was going to take Presslar and Hazelwood to jail and hell with him. Presslar jumped into the backseat of the car and Hazelwood crawled into the front passenger seat to try and convince defendant not to ram the tractor trailer. Before Hazelwood could say or do anything, defendant's car jerked to the right of the tractor trailer and into the emergency lane. Defendant began accelerating rapidly in the emergency lane between the guardrail and the tractor trailer. The emergency lane ended at a bridge and defendant's car brushed the guardrail before colliding with the tractor trailer in the right-hand lane. The tractor went to the left, separated from the two trailers, and went over the bridge onto Surry Line Road, below U.S. Highway 52. The two trailers remained on U.S. Highway 52.

Defendant was pinned in his car after the accident. He was conscious and asked Presslar and Hazelwood to dispose of the alcohol in the car. Presslar and Hazelwood got out of the car and went to check on the tractor trailer's driver. They could not locate the tractor, only the two trailers that were on their sides on U.S. Highway 52. At that time, passing motorists stopped to provide assistance. One motorist located the tractor over the bridge on Surry Line Road and saw Mark Horn ("Horn"), the driver of the tractor trailer, positioned half out of the passenger side of the tractor and half inside. Horn sustained head, chest, and pelvic trauma, and died from these injuries. Horn had been a commercial truck driver for twenty-six years. He had received a certificate for driving ten years accident and injury free, as well as a Presidential Safety Citation for driving a million miles accident free.

A search of defendant's car by the North Carolina State Highway Patrol subsequent to the accident revealed multiple beer bottles. Trooper Brent Jones ("Jones") interviewed defendant at the hospital. Jones testified at trial that defendant was very talkative, had an odor of alcohol about his person, his speech was mumbled and slurred, and his face was red. Defendant denied having driven the car and claimed he had been asleep at the time of the accident. Based on evidence taken from the scene of the accident and Jones' observations at the hospital, Jones charged defendant with driving while impaired. A blood sample was taken with defendant's consent and his blood alcohol level was determined to be 0.10 grams of alcohol per 100 milliliters of whole blood, in excess of the legally permissible limit, nearly three hours after the accident.

On 1 June 2004, defendant was indicted on charges of second-degree murder and driving while impaired. On 30 January 2006, defendant went to trial on the charges. On 17 February 2006, a jury found defendant guilty of both charges, and Judge Henry L. Frye, Jr., sentenced defendant to 136-173 months imprisonment for second-degree murder. Judge Frye arrested judgment on the driving while impaired conviction. Defendant appeals.

[1] In his first argument, defendant contends that the trial court erroneously admitted evidence of his prior conduct to establish the element of malice required for second-degree murder. We disagree.

This Court has held that:

prior conduct such as prior convictions and prior bad acts will be admissible under Rule 404(b) of the North Carolina Rules of Evidence as evidence of malice to support a second-degree murder charge. Where the State offers such evidence, not to show defendant's propensity to commit the crime, but to show the requisite mental state for a conviction of second-degree murder, admission of such evidence is not error.

State v. McBride, 109 N.C. App. 64, 69, 425 S.E.2d 731, 734 (1993) (internal citations omitted).

In the instant case, the trial court admitted, over defendant's objection, evidence concerning defendant's prior conduct solely for the purpose of establishing the element of malice necessary for second-degree murder. This evidence tended to show that defendant and two fellow members of the Dobson Rescue Squad went to a restaurant for dinner and consumed alcoholic beverages on 16

November 2001. Because the Dobson Rescue Squad's bylaws, which defendant authored, prohibited members from responding to calls after consuming alcohol, it was arranged for other members of the Dobson Rescue Squad to cover rescue calls for the evening. While at the restaurant, defendant participated in consuming three pitchers of beer with the two fellow members as well as a twelve-ounce mug of beer. A call came over the radio that an accident had occurred, and defendant decided the group would respond, despite the protest of at least one of the fellow members, because they had consumed alcohol. On the way to the rescue call, defendant drove erratically, exceeding the posted speed limit, traveling in the emergency lane, flashing his car's lights, partially leaving the roadway at least once, and passing cars on both the right and the left. Defendant's erratic driving attracted the attention of a Dobson Police Officer who pursued defendant for three or four miles, until defendant reached the scene of the accident. Defendant's fellow rescue squad members testified that they were scared while traveling to the rescue call, with one stating that he was "hunkered down" in the backseat, afraid defendant was going to have an accident, and both stating that they each told defendant on several occasions to "slow down."

The jury was given a limiting instruction on this evidence. The trial court cautioned the jury that the evidence of defendant's prior conduct was "received solely for the purpose of showing the defendant had the malice which is the necessary element of the crime of second degree murder which the defendant is charged with in this case. If you believe this evidence you may consider it, but only for the limited purpose for which it was received."

The trial court's limiting instruction shows that the evidence of defendant's prior conduct was admitted not to show defendant's propensity to commit the crime for which he was charged. Rather, the trial court admitted the evidence of defendant's prior conduct for the purpose of showing defendant had the malice required to commit second-degree murder. Because the trial court admitted evidence of defendant's prior conduct for the purpose of showing a requisite mental state, the trial court did not err. *See McBride*, at 69, 425 S.E.2d at 734.

Even assuming *arguendo* that it was error to allow evidence of defendant's prior conduct under N.C. Gen. Stat. § 8C-1, Rule 404(b), defendant has failed to show that a different result would have been reached had the evidence not been admitted. *See* N.C. Gen. Stat.

§ 15A-1443(a) (2006). The State presented sufficient other evidence from which the jury could infer malice. *See, e.g., State v. Fuller*, 138 N.C. App. 481, 484, 531 S.E.2d 861, 864 (2000). Defendant operated his car while his blood alcohol level was over the legal limit, exceeded the posted speed limit on multiple occasions, ran multiple red lights, acted belligerently, and stated that he was intentionally going to ram the tractor trailer. This evidence was more than sufficient for the jury to infer malice, even without the evidence of defendant's prior conduct. *See id*. This assignment of error is without merit.

[2] In his second argument, defendant contends that the trial court failed to correct the bailiff's improper *ex parte* communication with the jurors. We disagree.

Prior to trial, the bailiff notified the trial court of a conversation with the jury and the trial court discussed the circumstances with counsel:

> THE BAILIFF:  Judge, one more thing I need to tell you. They talked about [the court reporter's] notes. And I told them that was not in a note form; it was no way [sic] they could get a copy of that when the trial was over for deliberations.

> THE COURT:  Okay. Well, there's a possibility it could be done. But it's a issue [sic] that at some point that is a discretionary thing whether or not they can get those, get those notes. So what I'll do is tell them—let me do something first. I'm going to put it this way—see how y'all want to react. I'm going to say: As it relates to a transcript of this trial, obtaining that is a discretionary matter of the Court, which I will address at a later time. I think it's easy way [sic] to do that rather than cart blanc [sic] saying—cut them off. I think if I make that statement I think that will cover you up to the time they make some formal request for a transcript, so—since those cases that came out about not saying it's not available. If we conclude this matter it's going to happen one time and not be retried on that issue. Any issue to be heard on that?

[PROSECUTION]:  No, sir, Judge.

[DEFENSE]:       No, Your Honor.

The trial court then impaneled the jury and gave them preliminary instructions. These preliminary instructions included the following statement: "[a]s relates to any transcript of trial, at this point obtaining that is a discretionary matter with the Court, which I will address with you at a later time." The issue of whether the jury could obtain any portion of the trial transcript during their deliberations did not arise during the trial.

Defendant now argues that the trial court failed to correct the bailiff's misstatement to the jury. We note that the trial court's instructions to the jury pertaining to this matter were substantially identical to what he advised the attorneys he would tell the jury.

Defendant contends that this issue is reviewable by this Court in the absence of any objection at trial by defendant based upon the cases of *State v. Ross*, 322 N.C. 261, 264-65, 367 S.E.2d 889, 891 (1988), and *State v. Pakulski*, 319 N.C. 562, 575, 356 S.E.2d 319, 327 (1987). These cases hold that where a defendant requests a jury instruction, the trial judge promises to give it, the instruction is not given, and the defendant fails to object at the conclusion of the jury charge, the error is preserved for appellate review. See *Ross*, at 265, 367 S.E.2d at 891; *Pakulski*, at 575, 356 S.E.2d at 327. In this case there was no objection to the proposed instruction, no objection to the instruction as given, no request for an additional instruction at the jury instruction conference, and no objection following the judge's charge to the jury. Therefore, neither *Ross* or *Pakulski* are applicable to this issue.

Defendant made no objection to the trial court's proposed instructions to the jury, or to the instructions as actually given. Therefore, our review is limited to plain error. Plain error is an error " 'so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached.' " *State v. Parker*, 350 N.C. 411, 427, 516 S.E.2d 106, 118 (1999), *cert. denied*, 528 U.S. 1084, 145 L. Ed. 2d 681 (2000) (quoting *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988)).

Defendant contends that because the trial court did not address the possibility of obtaining a trial transcript with the jury "at a later time," it failed to exercise its discretion to allow the jury to review portions of the trial transcript. This alleged error, according to

**IN RE A.H.**

[183 N.C. App. 609 (2007)]

defendant, caused the jury to believe that a transcript was not available. Defendant relies on the case of *State v. Lang,* 301 N.C. 508, 272 S.E.2d 123 (1980), where the jury made a formal request for a portion of the trial transcript during deliberations. The trial court in *Lang* failed to exercise its discretion by telling the jury that the transcript was not available. *Id.* at 511, 272 S.E.2d at 125. *Lang* is distinguishable from the case *sub judice,* as it is clear from the record in the instant case that the jury did not make a formal request for the trial transcript. Further, the trial court's comments to counsel indicate that it was aware of its authority, within its discretion, to deliver any portions of the trial transcript to the jury upon a formal request. *See State v. Guevara,* 349 N.C. 243, 252-53, 506 S.E.2d 711, 718 (1998). *Contra Lang,* at 511, 272 S.E.2d at 125. Defendant has failed to show that the jury somehow believed the transcript was unavailable. We cannot hold that the jury would have probably reached a different verdict had the trial court addressed the trial transcript issue again with the jury. *See, e.g., State v. Green,* 77 N.C. App. 429, 432, 335 S.E.2d 176, 178 (1985) (concluding that there was no prejudice such that a different result would have been reached by the jury). This assignment of error is without merit.

Assignments of error listed in the record but not argued in defendant's brief are deemed abandoned. N.C. R. App. P. 28(b)(6) (2006).

NO ERROR.

Chief Judge MARTIN and Judge STEPHENS concur.