STATE v. BAKER

[109 N.C. App. 643 (1993)]

---

STATE OF NORTH CAROLINA v. ALLISON BAKER, Defendant/Appellant

No. 9114SC702

(Filed 20 April 1993)

**Constitutional Law § 310 (NCI4th) — defendant's prior convictions — defense counsel's misstatements — failure to object to improper jury instructions — ineffective assistance of counsel**

Where defense counsel's statements that defendant had no criminal record led directly to the introduction of evidence of his criminal record which would not have been otherwise admissible during the trial, and where defense counsel, without objection, allowed the jury to be instructed that they could only consider defendant's prior convictions as they may or may not impugn on defendant's credibility, though the convic-

tions had been admitted for the sole purpose of dispelling any false impression created by defense counsel, defense counsel's conduct was in error and deprived defendant of a fair trial.

Appeal by defendant from judgment entered 21 February 1991 by Judge A. M. Brannon in Durham County Superior Court. Heard in the Court of Appeals 8 April 1992. Reconsidered in the Court of Appeals pursuant to the mandate of the opinion filed 12 February 1993 by our Supreme Court.

The facts of this case have been set out at 106 N.C. App. 687, 418 S.E.2d 288 (1992) and 333 N.C. 325, 426 S.E.2d 73 (1993). Accordingly, we do not restate them here.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Valerie L. Bateman, for the State.*

*Currin & Boyce, by George B. Currin and Mary C. Boyce, for the defendant-appellant.*

EAGLES, Judge.

Pursuant to the direction of the Supreme Court, we have reconsidered defendant's assignments of error that our previous opinion did not address.

By his first assignment of error, defendant argues that he was denied effective assistance of counsel guaranteed under both the United States and North Carolina Constitutions. After careful examination of the record we agree.

A defendant's constitutional right to counsel includes the right to the effective assistance of counsel. *State v. Braswell*, 312 N.C. 553, 324 S.E.2d 241 (1985). The test for determining whether a defendant in a criminal case has received effective assistance of counsel is that set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984), and the test is the same under both the federal and state constitutions. *State v. Braswell*, 312 N.C. 553, 324 S.E.2d 241. To establish that there was ineffective assistance of counsel a defendant must meet the two-prong test of *Strickland:*

First the defendant must show that counsel's performance was deficient. This requires showing that counsel made

> errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*State v. Lewis*, 321 N.C. 42, 48-49, 361 S.E.2d 728, 732 (1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984)).

Defendant argues that his trial counsel committed errors which prejudiced his defense and deprived him of a fair trial. Specifically, defendant argues that his counsel erred in three respects: (1) by "incorrectly and unnecessarily stat[ing] on several occasions during the trial and before the jury, that the defendant did not have a criminal record[;]" (2) by failing to object to irrelevant penetration evidence; and (3) by failing to object to the "court's instruction to the jury regarding consideration of the defendant's prior convictions . . . ."

The Supreme Court decided in *State v. Baker*, 333 N.C. 325, 426 S.E.2d 73 (1993) that penetration evidence was relevant to the charges brought against the defendant. Accordingly, we hold that defendant's counsel did not err by failing to object to the introduction of the evidence.

However, defendant's trial counsel's errors in handling of the defendant's prior convictions and the resulting jury instruction are not so easily overcome. Defendant contends in his brief that during opening statements his counsel told the jury that he did not have a criminal record. We are unable to find the opening statement in the trial transcript or record before us. Even so, the State concedes in its brief that defense counsel stated during his opening statement that the defendant did not have a criminal record. Later, during cross-examination of Dr. Gregory, defense counsel began to ask Dr. Gregory a question when an objection was interposed by the prosecution. Defense counsel began, "Okay. Well, you've got a man sitting there *with no record in the world*, good family man—[.]" (Emphasis added). The Court then allowed defense counsel to pose the following question to which the prosecution again objected and asked to be heard.

Q. Well, let me ask the question this way, this is a forty-seven year old white male, married twenty years, twelve and a half years in his last employment, *no criminal record*, no children at home, is he the kind of person who would commit a sexual assault upon a child in an open spaced area, add to it, with the mother being less than five feet away, would he do that?

(Emphasis added).

After the State had rested its case, the prosecution responded to defense counsel's remarks by filing a motion to introduce the defendant's criminal record. The following is a portion of the collo-quy that ensued between the court, defense counsel and the prosecutor.

THE COURT: Mr. Vann, let me ask you this, let's do it step by step. It says here, defense counsel stated to the jury in his opening remarks, which is his opening statement that the defendant had no criminal record. Is that what you said?

MR. VANN: I'm certain it is.

THE COURT: I'm just asking you. Two, defense counsel asked Dr. Bonnie Gregory, that's the witness who was on the stand just before the break, to speculate, which is probably a fair word, on the defendant's ability to commit the offense charged given that he has been married twenty years, has a good work record and an absolutely clean criminal record.

MR. VANN: Okay. I said that.

THE COURT: Okay. Just checking. Three, defense counsel was provided a copy of the defendant's record prior to trial.

MR. VANN: That's true. When I walked in the door I was given one. I didn't see one before.

THE COURT: When did you see it?

MR. VANN: When was it?

MS. WEIS: Your Honor, I did provide Mr. Vann with a copy of the record Monday morning prior to—

MR. VANN: (Interposing) I didn't get a copy.

MS. WEIS: I showed it to him. Mr. Vann indicated to me that he was aware of those.

The court then examined a computer print out of the defendant's criminal record which appeared to the court to include the following information: (1) defendant was arrested and convicted in 1962 of felonious breaking and entering and larceny; (2) defendant was paroled on 6 February 1963; (3) the defendant's parole was revoked after he was arrested for possession of amphetamine drugs in June 1963; and (4) that the defendant went to prison for a misdemeanor conviction on 11 November 1966 of operating a motor vehicle with a suspended license. After reviewing the defendant's criminal record the following transpired:

MR. VANN: I assume that if you're going to rule in their favor, then what I'm going to do when he gets in the box and identifies himself, I'm going to clear this up. So, you know, I don't—

THE COURT: (Interposing) I understand. Mr. Vann, under the case law, I believe the State is right. Neither side is entitled to create a false impression.

MR. VANN: Well, that was certainly nobody's intent.

THE COURT: I'm not sure if it's a matter of intent, it was a matter of cold occurrence. If I was sitting in that jury box, I would take from your two remarks that your client came down here in the last snow storm, just like any other snow piece, clean as driven snow and had never seen the inside of a courthouse except to list and pay taxes and perhaps serve on the jury.

MR. VANN: Well, one of them is twenty-five years old and one is twenty-eight years old and one is twenty-nine years old.

THE COURT: I understand. You will note that under Rule 608, there are no time limits whatsoever as there are under 609. I'm perfectly prepared—I believe it would not have been admissible save and except for what you told this jury.

MR. VANN: Okay. Well, I'm going to untell them.

THE COURT: That's fine. Now, technically speaking, when you take a look at 608, it says 608 can only be inquired into on cross examination but out of a super abundance of precautions and because one of the commentators that I have been looking at in the last week says that that should be ignored,

I'm going to allow you, as though it was 609, to deal with it up front so as to rob any sting that might be in it.

MR. VANN: Okay. We're going to do that.

THE COURT: Okay.

MR. VANN: I've got the dates down here now.

THE COURT: I'll give you the printed record.

MR. VANN: February 26, '62, June of '63 and sometime in November of '66, driving with license revoked.

THE COURT: I'm going to give to y'all the computer record because I do not take my dates as being correct. You take whatever date you find correct. *But it's received for the limited purpose of dispelling what could be a false impression that counsel said was inadvertently created.* Whatever it was, it sure created it for me and, therefore, for the fourteen jurors.

(Emphasis added).

Thereupon, defense counsel elicited the defendant's criminal record from the defendant on direct examination. Defense counsel did not request a limiting instruction at that time, and the trial court did not offer one on its own. However, later, during the jury charge, the trial court instructed the jury as follows:

You may consider any prior criminal convictions and/or prior acts tending to show a lack of truthfulness as well as showing truthfulness, but I specifically instruct you that any prior convictions may only be considered on the issue of credibility or believability. Other than that, they may not be considered by you for any other purpose in the case itself.

Defense counsel did not object to this instruction.

Clearly, defense counsel's statements led directly to introduction of evidence which, as the trial court recognized, would not have been otherwise admissible during the trial. Moreover, defense counsel, without objection, allowed the trial court to instruct the jury that the defendant's prior convictions could be considered to impeach the defendant's credibility or believability even though the defendant's convictions had been admitted *"for the limited purpose of dispelling what could be a false impression that counsel said was inadvertently created."* (Emphasis added). In short, defense

counsel, without objection, allowed the jury to be instructed that they could *only* consider the defendant's prior convictions as they may or may not impugn on the defendant's credibility. The instruction simply did not mention that the convictions had been admitted for the sole purpose of dispelling any false impression created by defense counsel. Defense counsel's failure to object to the instruction given is even more egregious when one considers that defense counsel should have been particularly sensitive to any instruction concerning the convictions. The trial court had expressly told defense counsel earlier that the convictions would not have been admissible save defense counsel's error.

We conclude that defense counsel's conduct was in error and deprived the defendant of a fair trial. Accordingly, we hold that the defendant was denied effective assistance of counsel as guaranteed under both the federal and state constitutions.

The State argues, however, that this case is controlled by *State v. Lewis*, 321 N.C. 42, 361 S.E.2d 728 (1987). In *Lewis*, defense counsel, during his opening statement, told the jury that his client did not have any other charges pending against him. The prosecution immediately objected and pointed out that contrary to defense counsel's assertion the defendant did, in fact, have other charges pending against him. The trial court immediately re-instructed the jury that counsel's statements were not evidence, that counsel was not sworn nor subject to cross-examination and that they were to disregard the statement of counsel in their deliberations.

Here the trial court did not instruct the jury to ignore defense counsel's misstatements. While defense counsel's statement clearly opened the door to admission of the convictions to dispel any false impression created by defense counsel, it did not open the door to attack the defendant's credibility. However, the trial court did not instruct the jury that the defendant's convictions could only be considered to dispel the false impression created by defense counsel. Rather, the court instructed the jury that they were to consider the defendant's convictions only as they related to his credibility.

We also note that in *Lewis* the Supreme Court indicated that in order to prevail on appeal, a defendant must be able to show that the jurors' knowledge of the defendant's criminal record compromised "their ability to listen anew to and fairly judge the evidence in defendant's case." *Lewis*, 321 at 49, 361 S.E.2d at 733 (quoting

*State v. Ysaguire*, 309 N.C. 780, 784, 309 S.E.2d 436, 439 (1985) ). Here, we are persuaded that the trial court's instruction alone is sufficient to indicate that the jurors' ability to listen anew to and fairly judge the evidence was compromised. Accordingly, we hold that *Lewis* is factually distinguishable from the instant case.

Because of our disposition of defendant's first assignment of error, we do not address his remaining assignments.

New trial.

Chief Judge ARNOLD and Judge WELLS concur.