An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-474

NORTH CAROLINA COURT OF APPEALS

Filed: 7 January 2014

STATE OF NORTH CAROLINA

v.                                      Buncombe County
                                        Nos. 12 CRS 112
                                              11 CRS 63583
                                              11 CRS 63582

DERRICK EDDINGS, JR.


Appeal by Defendant from judgments entered 8 June 2012 by Judge Laura J. Bridges and order entered 5 December 2012 by Judge Gary M. Gavenus in Buncombe County Superior Court. Heard in the Court of Appeals 8 October 2013.

> *Attorney General Roy Cooper, by Assistant Attorney General John F. Oates, Jr., for the State.*
>
> *Anna S. Lucas, for Defendant.*


DILLON, Judge.


Derrick Eddings, Jr., ("Defendant") appeals from judgments entered based on jury verdicts convicting Defendant of possession of cocaine with intent to sell or deliver, possession of drug paraphernalia, and trafficking in cocaine. Defendant also appeals from the trial court's order denying his post-trial

motion for appropriate relief. We conclude Defendant had a fair trial, free from error, and we affirm the trial court's denial of Defendant's motion for appropriate relief.

The evidence of record tends to show the following: On 11 November 2011, officers of the Asheville Police Department conducted surveillance in a neighborhood in the city after an informant gave the police department a tip about drug activity at one house in the neighborhood. While they were conducting surveillance, Defendant came out of the house, got into his car, and drove away. Officer Brandon Morgan followed Defendant and noticed a person in the passenger seat. The passenger was holding a black duffel bag and was not wearing his seatbelt. Because Officer Morgan was not in uniform and was in an undercover vehicle, he radioed Sergeant Geoffrey Rollins to stop the vehicle because the passenger was not wearing his seatbelt. Sergeant Rollins got behind Defendant's vehicle and initiated the traffic stop.

Sergeant Rollins spoke to the passenger, who identified himself as Keeve Crooks ("Crooks"), and who was holding a black duffel bag and appeared very nervous. Defendant consented to a search of the vehicle, and officers discovered crack cocaine in the black duffel bag Crooks was holding. Crooks claimed

ownership of the crack cocaine discovered in the duffel bag. Defendant was not charged and was allowed to leave.

Officer Morgan and Sergeant Rollins left the scene of the traffic stop and traveled back to the house they had been surveilling. Defendant's family members were at the house when officers arrived. The owner of the house, Defendant's grandmother, consented to the police searching the bedroom that Defendant and his uncle shared. Officer Morgan found crack cocaine in three individual packages zipped inside a pillow, which was located between a futon and a computer stand.

Defendant was indicted on charges of trafficking in cocaine, possession with intent to sell or deliver cocaine, and possession of drug paraphernalia. Defendant's case came on for trial during the 5 June 2012 criminal session of Buncombe County Superior Court.

At trial, Ms. Collin Andrews, a forensic chemist with the State Bureau of Investigation, gave expert testimony as to the identity of the substance discovered in the bedroom, testifying that the weight of the substance was forty-seven grams and that the substance was cocaine base.

In the trial court's initial charge to the jury, it instructed the jury on the definition of reasonable doubt as

follows: "A reasonable doubt is a doubt based on reason and common sense arising out of some or all of the evidence that has been presented, or lack or insufficiency of the evidence as the case may be. Proof beyond a reasonable doubt is proof that fully satisfies or entirely convinces you of the defendant's guilt." During deliberations, the jury sent the trial court a note asking what happened if the jury could not reach a verdict. One juror also asked the trial court to explain reasonable doubt, to which the trial court responded, "It's a doubt based on reason and common sense arising out of some or all of the evidence or the lack or insufficiency of the evidence, whichever the case may be, and you are to use your common sense and your reason to come to a decision. It's not absolute." When asked by a juror, "No hundred percent?" the trial court responded, "No hundred percent. I think they went over reasonable doubt in their arguments, and I can send back the definition of reasonable doubt if you want that." The jury foreperson said yes, and the trial court continued, stating, "If you're thinking that reasonable doubt is that you absolutely know that something happened, that is not reasonable doubt. It's not a certain thing, but you should have enough evidence to say that or that you can infer from that this happened or that happened."

Counsel for Defendant excepted to the trial court's verbal instruction, stating the following: "I will except to the Court's instruction, verbal instruction of the definition that Your Honor just gave, because you did not include that it's a doubt that fully satisfies or entirely convinces you[.]" After further discussion apart from the jury and with counsel for Defendant and the State, the trial court decided to reinstruct the jury on the definition of reasonable doubt, using the pattern jury instruction. The jury was called back to the courtroom, and the trial court reinstructed the jury as follows:

> There was some concerns that I didn't read the whole definition of reasonable doubt to you, so I'm going to read it to you as it states in the jury instruction. Reasonable doubt is a doubt based on reason and common sense arising out of some or all of the evidence that has been presented or lack or insufficiency of the evidence as the case may be. Proof beyond a reasonable doubt is proof that fully satisfies or entirely convinces you of the defendant's guilt.

Thereafter, the jury resumed deliberation. The jury found Defendant guilty of all charges, and the trial court entered judgments consistent with the jury's verdicts, consolidating the possession of cocaine with intent to sell or deliver conviction and the possession of drug paraphernalia conviction, for which Defendant was sentenced to six to eight months incarceration,

and entering a separate judgment for the trafficking in cocaine conviction, for which Defendant was sentenced to 35 to 45 months incarceration, to be served consecutively.

Several days after Defendant was convicted in this case, the State learned that Ms. Andrews, the chemical analyst who testified at trial, had failed a test proctored to her under the Forensic Sciences Act. On 11 June 2012, the State notified Defendant. On 26 June 2012, Defendant filed a motion for appropriate relief, requesting that the judgments be set aside and the charges dismissed, based on the State's inability to present a qualified expert to establish an essential element of the charges, or, in the alternative, to award a new trial. The trial court, pursuant to a motion by the State, ordered that the substances be reanalyzed. At the hearing on Defendant's motion for appropriate relief, SBI Special Agent Michael Piwowar testified that he reanalyzed the substance on 2 July 2012, and that the substance was crack cocaine weighing 42.9 grams. Mr. Piwowar acknowledged that Ms. Andrews had testified that the substance weighed 47 grams, but that the difference could have been attributable to evaporation of water from the substance. The trial court denied Defendant's motion for appropriate relief.

Defendant appeals from the judgments and the order denying his motion for appropriate relief.

### I: Jury Instruction on Reasonable Doubt

In Defendant's first argument on appeal, he contends the trial court committed error by instructing the jury on the definition of reasonable doubt. Defendant specifically contends the trial court defined reasonable doubt incorrectly and incompletely, in a manner that resulted in the State's burden of proof being lowered. We believe the trial court's instruction does not constitute reversible error.

When an alleged error in a jury instruction is properly preserved by exception at trial, our Court reviews the jury instructions *de novo*. *State v. Foye*, __ N.C. App. __, __, 725 S.E.2d 73, 79 (2012) (citation omitted). "The charge of the court must be read as a whole[.] . . . It will be construed contextually, and isolated portions will not be held prejudicial when the charge as [a] whole is correct. If the charge presents the law fairly and clearly to the jury, the fact that some expressions, standing alone, might be considered erroneous will afford no grounds for reversal." *State v. Hooks*, 353 N.C. 629, 634, 548 S.E.2d 501, 505 (2001), *cert. denied*, 524 U.S. 1155, 151 L. Ed. 2d 1018 (2002). "The charge will be held to be

sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed[.]" *State v. Blizzard*, 169 N.C. App. 285, 296-97, 610 S.E.2d 245, 253 (2005) (citation and quotation marks omitted). "Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury." *Id.* (citation and quotation marks omitted). "If . . . it is sufficiently clear that no reasonable cause exists to believe that the jury was misled or misinformed, any exception to it will not be sustained even though the instruction could have been more aptly worded." *State v. Maniego*, 163 N.C. App. 676, 685, 594 S.E.2d 242, 248 (2004) (citation omitted).

While "no particular formation of words is necessary to properly define reasonable doubt," "the instructions, in their totality, must not indicate that the State's burden is lower than 'beyond a reasonable doubt.'" *State v. Taylor*, 340 N.C. 52, 59, 455 S.E.2d 859, 862-63 (1995) (citing *Victor v. Nebraska*, 511 U.S. 1, 5, 127 L. Ed. 2d 583, 590 (1994)).

In its charge to the jury, the trial court initially gave the definition of reasonable doubt contained in N.C.P.I. – Crim. 101.10 (2013), which states as follows:

> The defendant has entered a plea of "not guilty." The fact that the defendant has been [indicted] [charged] is no evidence of guilt. Under our system of justice, when a defendant pleads "not guilty," the defendant is not required to prove the defendant's innocence; the defendant is presumed to be innocent. The State must prove to you that the defendant is guilty beyond a reasonable doubt.
>
> A reasonable doubt is a doubt based on reason and common sense, arising out of some or all of the evidence that has been presented, or lack or insufficiency of the evidence, as the case may be. Proof beyond a reasonable doubt is proof that fully satisfies or entirely convinces you of the defendant's guilt.

*Id.* When a juror asked for reasonable doubt to be again defined, the trial court's definition "could have been more aptly worded." *Maniego*, 163 N.C. App. at 685, 594 S.E.2d at 248. After a discussion with counsel for Defendant and the State, the trial court reinstructed the jury on the definition of reasonable doubt, again using N.C.P.I. – Crim. 101.10. We find this case similar to *State v. Foye*, __ N.C. App. __, 725 S.E.2d 73 (2012), in which this Court stated, "we cannot see how the additional language that 'nothing can be proved 100 percent

basically,' when viewed together with the correct pattern jury instruction, lowered the burden to less than reasonable doubt or otherwise prejudiced defendant." *Id.* at \_\_, 725 S.E.2d at 80. Construing the jury charge in this case contextually and as a whole, we believe the charge presents the law fairly and clearly to the jury, and although some expressions, standing alone, might be considered erroneous, those expressions afford no grounds for reversal in this case, *see Hooks*, 353 N.C. at 634, 548 S.E.2d at 505, because we do not think there was reasonable cause to believe the jury was misled or misinformed, *see Blizzard*, 169 N.C. App. at 296-97, 610 S.E.2d at 253. This argument is without merit.

## II: Ineffective Assistance of Counsel

In Defendant's second argument on appeal, he contends Defendant was provided ineffective assistance of counsel when, on cross-examination, defense counsel opened the door for allegedly prejudicial testimony to be introduced, which the parties had stipulated was inadmissible and would not be admitted at trial. We find Defendant's argument without merit.

"To prevail on a claim of ineffective assistance of counsel, a defendant must first show that his counsel's performance was deficient and then that counsel's deficient

performance prejudiced his defense." *State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286, *cert. denied*, 549 U.S. 867, 166 L. Ed. 2d 116 (2006) (citations and quotation marks omitted). "Deficient performance may be established by showing that counsel's representation fell below an objective standard of reasonableness." *Id.* "Generally, to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

"Decisions concerning which defenses to pursue are matters of trial strategy and are not generally second-guessed by this Court." *State v. Prevatte*, 356 N.C. 178, 236, 570 S.E.2d 440, 472 (2002), *cert. denied*, 538 U.S. 986, 155 L. Ed. 2d 681 (2003) (citations omitted).

In this case prior to trial, Defendant filed a motion to suppress and motion in limine requesting that the trial court prohibit the State from introducing evidence pertaining to the information contained in the anonymous tip that led to Defendant's arrest, which was stipulated to by the State.

On direct examination, Officer Morgan testified that he went to perform surveillance on a particular neighborhood based on a tip about drug activity. No testimony was introduced

concerning the contents of the tip. On cross-examination, however, counsel for Defendant asked Officer Morgan more specific questions about the anonymous tip, including information regarding the make and model of Defendant's car. Defense counsel asked, "[a]nd turns out also that that tip gave you information that perhaps [Defendant] hides his drugs in his vehicle; isn't that correct?" Officer Morgan responded, "That's correct." Counsel then attempted to elicit testimony from Officer Morgan to confirm that there were no drugs "hidden" inside Defendant's vehicle when he was stopped. On redirect examination, the State asked Officer Morgan questions regarding the information contained in the tip, including the statement that "there [were] narcotics being sold out of the house at night." Officer Morgan also said the tip was possibly from a family member, and "[t]here was a total of three, possible four calls from the same individual actually wanting to know why we hadn't done something about it yet." The State put on record that Defendant "opened the door" for the State's questions regarding the contents of the anonymous tip.

Defendant relies on *State v. Baker*, 109 N.C. App. 643, 428 S.E.2d 180, *disc. review denied*, 334 N.C. 435, 433 S.E.2d 180 (1993), in support of the proposition that "opening the door" to

the evidence in this case fell below the standard of reasonableness. In *Baker*, counsel for the defendant made errors pertaining to the "handling of the defendant's prior convictions and the resulting jury instruction." *Id.* at 645, 428 S.E.2d at 478. Specifically, counsel represented to the jury, in his opening statement and during the trial, that the defendant had no criminal record. The prosecution responded by filing a motion to introduce the defendant's criminal record, which showed that the defendant, in fact, had several prior convictions, including felonious breaking and entering, larceny, possession of amphetamine drugs, and operating a motor vehicle with a suspended license. The convictions were twenty-five to twenty-nine years old, and the trial court stated, "I believe it would not have been admissible save and except for what you told this jury." *Id.* at 647, 428 S.E.2d at 479. During the trial court's charge to the jury in *Baker*, the trial court instructed that "[y]ou may consider any prior criminal convictions and/or prior acts tending to show a lack of truthfulness as well as showing truthfulness, but I specifically instruct you that any prior convictions may only be considered on the issue of credibility or believability. Other than that, they may not be considered by you for any other purpose in the case itself."

*Id.* at 648, 428 S.E.2d at 479. This was at odds with the trial court's statement at the time the prior records were introduced: "*[I]t's received for the limited purpose of dispelling what could be a false impression that counsel said was inadvertently created.*" *Id.* (emphasis in original). Counsel did not object to the trial court's instruction, and "allowed the jury to be instructed that they could only consider the defendant's prior convictions as they may or may not impugn on the defendant's credibility." *Id.* at 648, 428 S.E.2d at 479. This Court held, on the foregoing facts, that "defense counsel's conduct was in error and deprived the defendant of a fair trial." *Id.* at 649, 428 S.E.2d at 480.

We believe this case is distinguishable from *Baker*. Here, the theory of the State's case against Defendant depended on Defendant's constructive possession of drugs in a shared bedroom. In order to provoke doubt, counsel for Defendant needed to show that the police officers were focused on Defendant to the exclusion of other suspects. It is conceivable that counsel for Defendant sought to achieve this by revealing factual inconsistencies contained in the tips, even though the evidence would have been otherwise inadmissible. "In reviewing an ineffective assistance claim, we resist the urge to second-

guess trial counsel's actions." *State v. Augustine*, 359 N.C. 709, 733, 616 S.E.2d 515, 532 (2005), *cert. denied*, 548 U.S. 925, 165 L. Ed. 2d 988 (2006). "Because counsel is given wide latitude in matters of strategy, . . . defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy[.]" *Id.* (citations and quotation marks omitted). This, we believe, Defendant has failed to do. We do not believe, on the facts of this case, that counsel was objectively unreasonable.

### III: Motion for Appropriate Relief

In Defendant's final argument, he contends that the trial court improperly denied Defendant's motion for appropriate relief, and that Defendant is entitled to a new trial. We disagree.

Our standard of review for a motion for appropriate relief is well established. "When a trial court's findings on a motion for appropriate relief are reviewed, these findings are binding if they are supported by competent evidence and may be disturbed only upon a showing of manifest abuse of discretion." *State v. Lutz*, 177 N.C. App. 140, 142, 628 S.E.2d 34, 35 (2006) (citation omitted). "However, the trial court's conclusions are fully reviewable on appeal." *Id.*

In March 2011, our Legislature enacted the Forensic Sciences Act, requiring all forensic science professionals in the State Crime Lab to obtain individual certification consistent with the International Organization for Standardization. 2011 N.C. Sess. Law 19 § 4; 2011 N.C. Sess. Law 307 § 8. On 14 June 2012, after the trial in this case, counsel for Defendant was notified by the District Attorney that Ms. Andrews failed her certification test. Defendant filed a motion for appropriate relief arguing he should be awarded a new trial because Ms. Andrews should not have been qualified as an expert.

In its order denying Defendant's motion, the trial court found, *inter alia*, as follows: During the trial, Ms. Andrews was offered by the State as an expert witness in forensic chemistry, without objection by Defendant; she testified that the total weight of the controlled substance submitted to her was 47 grams; and that the substance contained therein was crack cocaine. After the trial, the Office of the District Attorney in Buncombe County learned Ms. Andrews had failed an exam given to her in an effort to comply with the Forensic Sciences Act. The Office immediately informed counsel for the Defendant of this information on 13 June 2012. The substance was retested by

Mr. Piwowar, who determined that the controlled substance was crack cocaine with a total weight of 42.9 grams, well in excess of the 28 grams necessary to convict Defendant.

Based on the findings, the trial court concluded as a matter of law the following:

> 1. The Defendant received a fair and impartial trial.
>
> 2. The Defendant's Constitutional rights were not violated or denied.
>
> 3. The "newly discovered evidence[,]" . . . that Special Agent Andrews had failed the examination, would not have resulted in her not being qualified as an expert in the field of Forensic Chemistry.
>
> 4. That the analysis of the controlled substances by both Special Agent Andrews and Special Agent Piwowar were conducted in accordance with widely accepted reliable principles and methods and were and are admissible.
>
> 5. That the "newly discovered evidence" was not withheld by the State but was made known to the Defendant immediately upon the District Attorney['s] office being made aware of the evidence.
>
> 6. That the "newly discovered evidence" merely tends to impeach or discredit the testimony of Special Agent Andrews and only goes to the weight and not the admissibility of her testimony.
>
> 7. That the "newly discovered evidence" is not of such a nature that a different result will probably be reached at a new trial. To

> the contrary, evidence at a new trial would again establish sufficient evidence for a jury to find beyond a reasonable doubt that the defendant possessed more than 28 grams but less than 200 grams of cocaine, possessed the cocaine with the intent to sell and deliver it and possessed drug paraphernalia.

The trial court also stated that the admission of evidence regarding Ms. Andrews' exam failure would probably not have resulted in a different outcome given the other evidence at trial, including Defendant's own admission to an officer prior to his arrest that he possessed about an ounce and a half of cocaine, which is equal to 42.525 grams.

On appeal, Defendant does not argue that the trial court's findings of fact are not supported by the evidence. Rather, Defendant contends that under *State v. Allen*, __ N.C. __, __, 731 S.E.2d 510, 520 (2012), *disc. review denied*, 366 N.C. 415, 732 S.E.2d 582 (2012), the State was required to disclose the information concerning Ms. Andrews' failure of her certification test. In *Allen*, this Court explained *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215 (1963), in which the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

373 U.S. at 87, 10 L. Ed. 2d at 218. "To establish a *Brady* violation, a defendant must show (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial." *State v. McNeil*, 155 N.C. App. 540, 542, 574 S.E.2d 145, 147 (2002), *disc. review denied*, 356 N.C. 688, 578 S.E.2d 323 (2003) (citing *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215 (1963)). "Evidence is considered 'material' if there is a 'reasonable probability' of a different result had the evidence been disclosed." *State v. Berry*, 356 N.C. 490, 517, 573 S.E.2d 132, 149 (2002) (citation omitted).

In Defendant's brief on appeal, he contends that "the defense had a right to the information that the testifying chemical analyst did not pass the certification exam"; however, Defendant concedes that he "is not asserting that the District Attorney's Office possessed this information prior to trial[,] [b]ut it is clear from the record that the results were available in January of 2012 and the SBI did not disclose the information to the District Attorney." Defendant also contends that the results of Ms. Andrews' failed examination "would have been the subject of cross-examination questions directed to impeach her qualifications[.]"

We believe Defendant's argument must fail. At most, we believe Defendant has shown that the newly discovered evidence *may* have changed the verdict; however, we do not believe there was a "'reasonable *probability*' of a different result had the evidence been disclosed" at the time of the trial in this case. *Berry*, 356 N.C. at 517, 573 S.E.2d at 149 (emphasis added). We affirm the trial court's order denying Defendant's motion for appropriate relief.

NO ERROR, in part; AFFIRMED, in part.

Judge McGEE and Judge McCULLOUGH concur.

Report per Rule 30(e).