An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-660

Filed 15 April 2026

Guilford County, Nos. 21CR079882-400, 21CR079883-400, 21CR079885-400, 22CR026020-400

STATE OF NORTH CAROLINA

v.

JAMES ARTHUR JONES, III

Appeal by defendant from judgment entered 25 September 2024 by Judge Stephanie L. Reese in Guilford County Superior Court. Heard in the Court of Appeals 11 March 2026.

> *Attorney General Jeff Jackson, by Assistant Attorney General BreAnna VanHook, for the State.*

> *Gilda C. Rodriguez, for Defendant.*

ARROWOOD, Judge.

James Arthur Jones, III ("defendant") appeals from judgment entered after jury trial where he was found guilty of possession of a firearm by a felon, misdemeanor possession of a Schedule II controlled substance, and simple possession of a Schedule VI controlled substance. Defendant admitted to having attained the

status of habitual felon.  For the following reasons, we find no plain error and affirm the trial court's judgment.

## I.  Introduction

The evidence presented at trial tended to show the following events.  On 4 August 2021, Jonnie Joyce ("Mr. Joyce") and James Wagner ("Mr. Wagner") had walked to a gas station on Brentwood Street in High Point, where they saw defendant driving a Jeep, and defendant agreed to drive them back to a nearby motel.  At the same time, High Point Police Department Detectives Hohn, Lanier, and Manzo were in an unmarked vehicle patrolling the area, known for criminal activity.  The officers ran the Jeep's license plate and found it was expired, so they conducted a traffic stop.  Defendant was in the driver's seat, Mr. Joyce was in the front passenger seat, and Mr. Wagner was in the rear.

Detective Hohn approached the driver's side while Detective Lanier approached the passenger side, and they smelled marijuana.  Both Mr. Wagner and Mr. Joyce told Detective Lanier they had just got into the car moments earlier.  Detective Lanier asked Mr. Joyce to step out, and in searching his person, found a crack pipe and detained him.  Mr. Wagner was also briefly detained but not charged, because he freely admitted that he had a needle in his pocket before Detective Lanier searched him.

Detective Manzo and Detective Hohn conducted a search of the vehicle.  From the driver's door and the floorboards of both the driver's and front passenger's area,

Detective Manzo recovered several pieces of a white substance and a clear plastic baggie with a suspected illegal narcotic substance, as well as a bud of marijuana in the front center console. Detective Hohn found suspected illegal narcotics and a firearm under the front passenger seat. The State Crime Lab tested the unknown substances and found they were fentanyl and ANPP, a chemical precursor to fentanyl.

Detective Hohn spoke with and searched defendant, who told Detective Manzo he was driving Mr. Joyce's car and was giving Mr. Joyce and Mr. Wagner a ride from the gas station to their motel. Defendant was detained due to a suspended license and had a powdery substance on his person. Defendant denied the gun was his. However, he admitted that the Jeep was full of his possessions, and several of his relatives arrived during the stop to retrieve his suitcase and other personal belongings. Mr. Joyce, who testified at trial, was the Jeep's registered owner, but he was allowing defendant to use the vehicle for several weeks in exchange for crack cocaine.

During the vehicle search, Detective Lanier noticed defendant speaking quietly to Mr. Joyce and offered to speak to the men individually. At the scene, Mr. Joyce first said he did not know the gun was under his seat. Defendant said, "He was letting me drive his car, they pulled me over, and I guess, goddamn, they found his little gun he be having in his car," whereupon Mr. Joyce immediately stepped aside to speak to an officer individually. Detective Hohn told Detective Lanier that Mr. Joyce said defendant saw police behind them and told him to take a gun from under the gear

shifter and put it under the front passenger seat. He also relayed that Mr. Wagner confirmed that defendant had been driving the car and said he had never known Mr. Joyce to carry a gun. Detective Lanier then spoke individually with Mr. Joyce and confirmed that he heard defendant telling him to take the gun possession charge. Detective Lanier said, "Trust me . . . . I know. You look pissed off and [defendant] looks completely nervous." At the police station, when the two men were in separate adjacent holding cells, Detective Hohn heard defendant saying, "You take this," and Mr. Joyce responding, "I'm not taking this."

At trial, Mr. Joyce testified that defendant asked him several times to throw the gun underneath the passenger seat and he complied, and that defendant told him to admit the gun was his, but Mr. Joyce refused. The State's other evidence included Detective Lanier's body cam footage, and defendant did not object to its admission. After its publication, and as it played for the jury, defendant objected to statements Detective Hohn attributed to Mr. Wagner, who did not testify. The trial court sustained the objection, struck the statements, and specifically instructed the jury to disregard them. Three other videos were admitted and published for the jury without objection: Detective Manzo's body cam footage and video interviews with Mr. Joyce and defendant.

The clerk of court testified that defendant was previously convicted of a felony. Defendant moved to dismiss the charges at the close of the State's evidence, did not present evidence or testify himself, then moved to dismiss the charges again, but the

court denied both motions. The jury found defendant guilty of possession of a firearm by a felon, and misdemeanor possession of both fentanyl and marijuana. Defendant stipulated to being a habitual felon. The court sentenced defendant to a term of 130 to 168 months imprisonment. He filed written notice of appeal on 30 September 2024.

## II.    Discussion

Defendant requests that we vacate his convictions and order a new trial. He makes four arguments on appeal, which we discuss in turn.

### A.    Admission of the Interview Videos was Neither an Error Nor Plain Error

The video interviews with defendant and Mr. Joyce contain references to defendant's criminal history and previous incarceration, as well as inferences to gang activity and Mr. Joyce's fear for his safety. Defendant argues that the admission and publication of these videos amounted to plain error.

Relevant evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (2019). All relevant evidence is admissible, except if disallowed by the Constitutions of the United States and North Carolina, Acts of Congress or the General Assembly, or by the Rules of Evidence. *State v. Thomas*, 281 N.C. App. 159, 186 (2021) (citing N.C.G.S. § 8C-1, Rule 402).

North Carolina Rule of Evidence 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show

that [the person] acted in conformity therewith." N.C.G.S. § 8C-1, Rule 404(b) (2019). Rule 404(b) is a "general rule of inclusion." *State v. Al-Bayyinah,* 356 N.C. 150, 154 (2002) (quotes omitted). Rule 404(b) permits admission of any evidence "relevant to any fact or issue other than the defendant's propensity to commit the crime." *State v. White,* 340 N.C. 264, 284, *cert. denied,* 516 U.S. 994 (1995). Rule 403 supplies an additional limitation on a trial court's ability to admit evidence under Rule 404(b): "Evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.G.S. § 8C-1, Rule 403 (2019).

"We review *de novo* the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b)." *State v. Beckelheimer,* 366 N.C. 127, 130 (2012). When a trial court weighs the likely probative and prejudicial value of evidence one party offers over the opposing party's objection, we review only for abuse of discretion. *Id.*

On appeal, defendant specifically challenged the admission of statements that defendant had previous charges, had been in prison, and had two of his children taken. But these facts were crucial to the meandering and contradictory story defendant spun for police in his interview, in which he accuses Mr. Joyce of bringing the gun into the Jeep without his knowledge, which he would never allow because, as a felon, he cannot have guns in his car. "I know for a fact that I would never let this man get in my car with a gun because I done stopped millions of people since 2014

when I got that charge." "I didn't never knew that he had that gun in that car . . . . Only time I knew he had that gun was when he pulled it out when y'all pulled us and he tried to hide it."

Defendant begins the interview by saying, "It was his car. I don't do drugs. I don't sell drugs." Seconds later, he admits to using marijuana that day. He then tells police his version of how he and Mr. Joyce became acquainted. A few weeks prior, defendant was at the motel to meet a woman and met Mr. Joyce through friends. He says he made a deal to borrow Mr. Joyce's Jeep, in exchange for money Mr. Joyce needed to buy drugs. They repeated the deal the following day and had been making the same exchanges for the Jeep ever since, with cash. However, defendant says that, other than the bud of marijuana, the drugs in the car are Mr. Joyce's, and he claims that the motel would verify the gun is Mr. Joyce's because he was repeatedly using it to rob prostitutes at the motel. "Anything I say can be verified. He had that gun before today. You can go to the hotel room and talk to them people."

Setting aside the obvious question why any motel would knowingly host a guest who repeatedly robs women at gunpoint on its premises, the statements about defendant's criminal history were directly relevant to issues other than his propensity to commit the charged offense. They are both relevant and probative on the factual question whether the gun was in his actual or constructive possession, because his entire interview hinges on his repeated claims that he would not allow a gun in the vehicle *because of his criminal history*.

Furthermore, the interview's probative value is not outweighed by unfair prejudice. The nature of defendant's previous offense is never discussed. Moreover, the challenged statements are far less prejudicial than the various contradictions of defendant's story. He admits the Jeep was full of his clothing and other personal belongings, but claims the gun and drugs are not his, including the drugs found on the driver's door and floorboard. He claims that he does not sell drugs himself, but says he knows the dealer who has been selling Mr. Joyce drugs with the cash defendant gives him to use the Jeep. And he claims knowledge that Mr. Joyce is armed and dangerous, but has continued to do business with him, drive his Jeep, and let him ride in its passenger seat, even though defendant is already a felon who cannot be around firearms. By comparison, the mere mention of defendant's criminal past is minimally prejudicial. Therefore, the trial court did not err by admitting his interview video in full.

Defendant also challenges statements from Mr. Joyce's interview: that defendant threatened him and that he fears for his safety because defendant is involved in gang activity and would kill him if he does not say the gun is his.

Mr. Joyce's interview is consistent with his testimony in all relevant details. He admits that, while in town for a job, he has allowed defendant to use the Jeep in exchange for drugs for the preceding two weeks, alleging that defendant comes to the motel several times a day to make drug transactions. The week before the arrests, he told defendant he would need the Jeep back, and he claims defendant threatened

him in response. Asked if defendant is in a gang, Mr. Joyce says he is, and that his street name is "Big Fool."

Mr. Joyce says he panicked after officers began tailing the Jeep and defendant told him, "Man, move that gun." He says he picked up the gun by the barrel and threw it under the seat, and that his fingerprints would not be found on the handle. They discuss his attempt to take the officers aside to tell them that defendant was trying to convince him to take the gun charge, and the officer confirms that he heard defendant saying this on the scene. Mr. Joyce tearfully accepts the officers' offer of future assistance if defendant puts him in danger.

These statements about defendant's other criminal activity were properly admissible, as they "establishe[d] the chain of circumstances [and] context" of the possession charges and were "necessary to complete the story of the charged crime for the jury." *White*, 340 N.C. at 284. Moreover, his details help explain the holes in defendant's story, and they elucidate Detective Hohn's testimony that Mr. Joyce's visible "fear" at the scene was the turning point for the investigation. The statements are relevant and probative as to defendant's knowledge at the time of the stop, and therefore whether he actually or constructively possessed the gun. Because of their detail, Mr. Joyce's statements were slightly more prejudicial than defendant's statements, but this prejudice does not outweigh their probative value for the jury. In fact, the State offered this evidence although it was arguably highly prejudicial to

its own case. The drug transactions and his decision to ride alongside a man who recently threatened him risked affecting the credibility of Mr. Joyce's testimony.

Defendant did not object to the admission of the two interview videos, so we review their admission only for plain error. Because the statements were relevant for various reasons other than defendant's propensity to commit the charged offenses and more probative than prejudicial, the trial court did not err in admitting the full videos. Accordingly, further analysis is unnecessary here. Without a "grave" error denying a "fundamental right of the accused," no showing of plain error is possible. *State v. Odom*, 307 N.C. 655, 660 (1983). Therefore, this argument cannot succeed.

### B.     Admission of the Body Cam Videos was not Plainly Erroneous

The court initially admitted Detective Lanier's body cam footage as State's Exhibit 1 without objection. Approximately the first 24 minutes of the video played for the jury before defense counsel raised a hearsay objection to the statements attributed to Mr. Wagner and spoken off-camera, that Mr. Wagner had never known Mr. Joyce to carry a gun, which Detective Hohn relays to Detective Lanier. The State argued that his statements were not "offered for the truth of the matter" but as "essentially assisting the law enforcement officers in determining what their next step should be."

The court sustained the objection and instructed the jury: "I'm going to strike any testimony from Detective Hohn -- Officer Hohn on the screen about statements from a Mr. Wagner." The jury then saw the rest of the video. Defendant did not

object to the admission of the State's Exhibit 2, Detective Manzo's body cam footage. In that video, Detective Hohn states that Mr. Wagner "confirmed" Mr. Joyce had not been driving the vehicle, and Mr. Joyce says, "[Mr. Wagner] says it's not my gun." Defendant did not object while the video was played or to the remainder of the State's direct examination of Detective Manzo.

On appeal, defendant contends that all three statements attributed to Mr. Wagner were inadmissible hearsay, and their erroneous admission amounts to plain error. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.G.S. § 8C-1, Rule 801; *see State v. Nicholson*, 355 N.C. 1, 35 (2002) ("The prohibition against hearsay bars the admission of out-of-court statements offered to prove the truth of the matter asserted.") (citation omitted).

Because Mr. Wagner did not testify, the three challenged statements are hearsay. However, as to the first statement, to which defendant objected, "it is well-settled in this jurisdiction that when the court withdraws incompetent evidence and instructs the jury not to consider it, any prejudice is ordinarily cured." *State v. Smith,* 301 N.C. 695, 697 (1981). Because the court withdrew the statement and expressly instructed the jury not to consider it, any prejudice from its introduction was effectively cured.

"To preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the

- 11 -

ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1) (2021). Because the court admitted without objection the next two statements attributed to Mr. Wagner, we review their admission for plain error. To show plain error, defendant must first show that a fundamental and "grave" error occurred at trial, amounting to "a denial of a fundamental right of the accused." *Odom*, 307 N.C. at 660. Defendant then must show both that the error "had a probable impact on the outcome, meaning that absent the error, the jury probably would have returned a different verdict" and that the "error is an exceptional case," requiring a showing that it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *State v. Reber*, 386 N.C. 153, 158 (2024) (citations and quotation marks omitted). As to probable impact, "[t]he test examines the state of all the evidence except for the challenged evidence and asks whether, in light of that remaining evidence, the jury probably would have done something different." *Id.* at 162. "In ordinary English usage, an event will 'probably' occur if it is 'almost certainly' the expected outcome; it is treated as synonymous with words such as 'presumably' and 'doubtless.'" *Id.* at 158.

As to Detective Hohn's statement that defendant had been driving Mr. Joyce's Jeep, the admission had no probable impact on the outcome. The State's other competent evidence revealed defendant stated this fact multiple times, both at the gas station and in his later interview. He cannot plausibly argue plain error here.

The statement Mr. Joyce attributes to Mr. Wagner, that the gun was not Mr. Joyce's, raises a different question, because Detective Lanier's body cam recorded Mr. Wagner himself making other statements about the issue. Defendant raises no objection about these statements. Although his speech is somewhat muddled, Mr. Wagner clearly says that although he can "vouch for" Mr. Joyce, he knows nothing about defendant or the gun and did not see any gun changing locations in the front seat. Detective Lanier says, "If I give you a phone number, and you call us later whenever they're not here watching us, is it gonna be the same thing that happened? . . . . We've heard different stories at this point, and you would be the one to set it straight." But Mr. Wagner sticks to his story.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. "A violation of the Confrontation Clause occurs when a 'testimonial' statement from an unavailable witness is introduced against a defendant who did not have a prior opportunity to cross-examine the declarant." *State v. Garner*, 252 N.C. App. 393 (2017). "[P]retrial statements that declarants would reasonably expect to be used prosecutorially" are "testimonial" for purposes of the Confrontation Clause. *Crawford v. Washington*, 541 U.S. 36, 51 (2004). Because Mr. Wagner spoke during an ongoing stop, after police discovered contraband and handcuffed all three men, it would have been reasonable to expect a

future prosecution to use his statements, and their introduction without his cross-examination would appear to implicate the Confrontation Clause.

However, it is unclear that Mr. Wagner's own statements even amount to testimony. Lay opinion testimony encompasses "those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." *State v. Hill*, 247 N.C. App. 342, 346 (2016). Here, the jury heard Mr. Wagner deny having perceived anything about which he could have formed a rational opinion or inference on the question of who possessed the gun or contraband. His statements offered the jury no assistance whatsoever in determining the issue, about which this jury heard multiple strands of testimony and evidence that were far more probative. Indeed, their only effect was to negate the reliability of the statement Mr. Joyce attributed to him. As a result, these statements actually prejudiced the State's case and the credibility of its key witness. Accordingly, the verdict would have been no different absent either the challenged statement attributed to Mr. Wagner or the statements recorded by Detective Lanier's body cam.

In sum, because the trial court cured the erroneous introduction of Detective Hohn's hearsay statement, and because the other statements' introduction generated no prejudice against defendant, had no effect on the outcome, and were unexceptional as to the integrity of this trial and the judicial process generally, defendant has failed to show plain error in relation to the admission of the body cam videos.

C.    The Record Does Not Show Ineffective Assistance of Counsel

Next, defendant argues that his trial counsel deprived him of effective assistance by failing to file motions in limine and timely object to the admission and publication of unredacted body camera and police interview videos.  We disagree.

Criminal defendants have the constitutional right to effective assistance of counsel.  *See State v. Baker*, 109 N.C. App. 643, 644 (1993); U.S. Const. amends. VI, XIV; N.C. Const. Art. I §§ 19, 23.  This right is abridged when (1) counsel's performance falls below an objective standard of professional reasonableness, and (2) but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different.  *See Strickland v. Washington*, 466 U.S. 668, 867 (1984); *State v. Braswell*, 312 N.C. 553, 563 (1985).  However, we need not determine whether counsel's performance was deficient if we find a "lack of sufficient prejudice" because the second prong of defendant's ineffective assistance argument is unavailing based on "the totality of the evidence."  *Strickland*, 466 U.S. at 694, 697; *see also Braswell,* 312 N.C. at 563.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland,* 466 U.S. at 694.

Even assuming *arguendo* that it was unreasonable for defendant's counsel to forgo motions in limine and objections here, we have already concluded that the verdict was most likely unaffected by the admission and publication of the full videos, based on the totality of the evidence.  The State offered the interview videos for proper purposes, and their contents were sufficiently probative and insufficiently

- 15 -

prejudicial, meeting the legal standard for admission. Admission of the unredacted body cam footage neither unfairly prejudiced defendant nor raised the probability of contrary jury verdicts. Therefore, defendant fails to show any violation of his Constitutional right to effective assistance of counsel.

D. <u>We Decline to Reach the Merits of Defendant's Argument that N.C.G.S. § 14-415.1 is Unconstitutional</u>

Defendant was charged and convicted of possession of a firearm by a felon under N.C.G.S. § 14.415-1(a). He argues that the statute is unconstitutional on its face and as applied to him, burdening his right to bear arms in light of *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) and *United States v. Rahimi*, 602 U.S. 680 (2024). However, he concedes that this argument is unpreserved on appeal, and requests that we exercise our discretion to invoke Rule 2 of the Rules of Appellate Procedure to reach the merits of his argument.

"To prevent manifest injustice to a party . . . either court of the appellate division may . . . suspend or vary the requirements or provisions of any of these rules in a case pending before it . . . upon its own initiative." N.C. R. App. P. 2. This Court's ability to invoke Rule 2 is discretionary. *State v. Bursell*, 372 N.C. 196, 201 (2019). "Rule 2 relates to the residual power of our appellate courts to consider, *in exceptional circumstances*, significant issues of importance in the public interest or to prevent injustice which appears manifest to the Court *and only in such instances*." *State v. Campbell*, 369 N.C. 599, 603 (2017) (emphasis in original).

Defendant concedes that this Court has upheld this statute following the above Supreme Court opinions. *See State v. Nanes*, 297 N.C. App. 863 (2025) (rejecting facial challenge); *State v. Ducker*, 298 N.C. App. 759, 770 (2025), *cert. denied,* 924 S.E.2d 818 (N.C. 2026). We are bound by this jurisprudence, and defendant has not shown that his case gives rise to exceptional circumstances warranting review on the merits pursuant to Rule 2. We therefore decline to invoke Rule 2 to reach defendant's argument as to this statute's constitutionality.

### III.   Conclusion

For the above reasons, we find no plain error and affirm the court's judgment.

NO PLAIN ERROR.

Judges STROUD and WOOD concur.

Report per Rule 30(e).